(No. 18930.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LEROY F. REWLAND, Plaintiff in Error.

*Opinion filed June 19, 1929.*

A. J. BOUTELLE, and JAMES E. DAVIS, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, R. C. RICE, State's Attorney, and ROY D. JOHNSON, (S. M. MEADOWS, and ROY M. MARSH, of counsel,) for the People.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Plaintiff in error, Leroy F. Rewland, and Frank E. Hoffman, were jointly indicted and tried in the circuit court of Knox county on an indictment for manslaughter. At the close of the evidence for the People a *nolle prosequi* was entered by the State's attorney as to the defendant Hoffman. The jury found plaintiff in error guilty. Motions for a new trial and in arrest of judgment were overruled and he was sentenced by the court to serve an indeterminate term of from one to fourteen years in the penitentiary. He brings the record here for review by writ of error.

The indictment is in three counts, the first of which charges that plaintiff in error and Hoffman on May 12, 1927, at and within the county of Knox, in the State of Illinois, in and upon James Henry Allen, in the peace of the People then and there being, unlawfully, willfully and feloniously did make an assault with a certain motor vehicle which the plaintiff in error and Frank E. Hoffman then and there did drive in and upon a certain public highway in the county of Knox unlawfully, negligently, willfully and feloniously, so as to endanger life and limb and "injure property of any person," and then and there gave to the said James Henry Allen mortal wounds, of which he died. The second count charges plaintiff in error and Hoffman did unlawfully, willfully, recklessly, negligently, wrongfully and feloniously in and upon the public highway aforesaid drive an automobile against a vehicle, to-wit, an automobile, on the public highway, in which James Henry Allen was being lawfully conveyed, and thereby then and there gave said James Henry Allen mortal wounds, of

which he died. The third count charges plaintiff in error and Hoffman did unlawfully, willfully and feloniously, while they were drunk or intoxicated, upon the public highway aforesaid drive an automobile upon and against a certain motor vehicle, to-wit, an automobile, in which James Henry Allen was being lawfully conveyed upon the public highway, and thereby then and there gave to the said James Henry Allen a certain "mortal fracture or injury," of which "mortal fracture or injury" the said James Henry Allen died on May 14, 1927. The indictment concludes with the usual charge by the grand jurors that the said Leroy Rewland and Frank E. Hoffman the said James H. Allen, in manner and form aforesaid on the date aforesaid, at and within the county aforesaid, unlawfully, willfully and feloniously did kill, contrary to the form of the statute, etc.

It is contended by the defendant that the court erred in overruling the motion to quash the indictment for three reasons: First, that the indictment is defective in failing to allege that the killing was done by plaintiff in error while in the commission of an unlawful act; second, the second count is defective for failing to describe the class of motor vehicle, as defined in the Motor Vehicle law, to which the automobile plaintiff in error was driving belonged; and third, that the third count is bad for uncertainty, in alleging, in the disjunctive, that plaintiff in error was "drunk or intoxicated" and that he inflicted upon the deceased a "mortal fracture or injury." The first two contentions are overruled on the authority of *People* v. *Falkovitch*, 280 Ill. 321. It is just as unlawful to unlawfully, willfully and feloniously make an assault upon an individual with a motor vehicle as it is to make a like assault upon the individual with a revolver loaded with deadly bullets and gunpowder, and just as criminal to kill an individual by such an assault with an automobile as it is to kill him by an assault with a revolver loaded as aforesaid. It is not more necessary to describe in an indictment the particular character

of a motor vehicle with which an individual unlawfully kills another person, than it is to describe the character of a revolver with which a similar killing is done. A motor vehicle is defined by our statute and construed to include automobiles, locomobiles, motor bicycles, tractors, traction engines, and all other vehicles propelled otherwise than by muscular power, and it is well known that any one of such motor vehicles is likely to produce death when driven against an individual at a high rate of speed on the public highway. The third count is not bad for uncertainty because of the fact stated by the defendant. The words "drunk" and "intoxicated" have well known meanings and they are synonyms. A "mortal fracture" and a "mortal injury" are also terms of well known meaning and practically mean the same thing. The words "or intoxicated," as well as the words "fracture or," may all be regarded as surplusage in the allegations of the indictment. The court did not err in overruling the motion to quash the indictment. *People* v. *Osborne,* 278 Ill. 104; *Stone* v. *People,* 2 Scam. 326.

On May 12, 1927, John Hjerpe, a mason contractor, his son, Leslie Hjerpe, and his helpers, Leonard C. Nelson and James Henry Allen, had been working at Lake Bracken, which is south of Galesburg, in Knox county. After they had finished their day's work in the afternoon of that day they started for their homes in Galesburg in a small truck which had been made from an Overland passenger automobile. They drove north and at about five o'clock P. M. drove onto the State hard-surfaced highway which runs between Knoxville and Galesburg, at a point south and east of Galesburg. This highway is improved with an eighteen-foot pavement, with dirt shoulders about six feet wide on either side of the pavement. They drove on this highway in a northwesterly direction toward Galesburg. Leslie. Hjerpe was driving and his father was sitting at his right in the seat of the truck. Nelson and Allen were sitting in,

the box or body of the truck. Allen was sitting on a cushion, with his legs and feet over the left side of the truck. A short distance out of Galesburg a railroad track known as the "brick-yards switch" crosses the State highway and is described by some of the witnesses of plaintiff in error as a rough crossing. This switch-track is on an elevation, and on either side of the crossing there is an up-grade of the State road to the crossing of this railroad track. When the truck which Leslie Hjerpe was driving was about 200 yards southeast of this railroad crossing, a Ford car driven by plaintiff in error crossed the railroad and approached the truck. Hoffman was riding in the Ford car with plaintiff in error. The Ford car and the truck collided and the Ford car left the road and plunged into the ditch on the northeast side of the highway. As a result of the collision of the car and the truck the legs of Allen were crushed, and he died of the injuries the next morning.

Eight witnesses testified for the State, all of whom were at said railroad crossing on the afternoon of the collision and before any of the parties riding in the truck or in the Ford car left the scene of the collision. Two of the witnesses riding in the truck, John Hjerpe and Leslie Hjerpe, testified that they saw the Ford car in which plaintiff in error and Hoffman were riding come across the railroad at a high rate of speed, which they fixed at forty miles an hour; that the front end of the car as it came over the railroad track never touched the pavement "for quite a distance," and that it came toward them zig-zagging, swerving first to the left and then to the right; that it appeared like the driver had lost control of the Ford car; that Leslie Hjerpe, driving the truck, got it as far over to the northeast side of the road as was possible before the collision and was then driving at the rate of about eighteen or twenty miles an hour; that the front part of the Ford car collided with the truck and struck it "in the rear, right in front of the back wheel, on the back fender," and that when the

Ford car struck the truck it was traveling at an angle toward the left side of the road—the northeast side of the road; that the legs of Allen were crushed against the side of the truck; that Nelson, who had been riding in the truck, was after the collision lying in the ditch, unconscious, fifteen feet from the car; and that the Ford car after the collision was twenty-five yards or more to the rear of the truck, against the embankment on the northeast side of the road, where it remained for some time after the collision. They both further testified that plaintiff in error and Hoffman were drunk, and that they stood around like drunken men and were shaky. Leslie Hjerpe further testified that just after the collision plaintiff in error got out of the Ford car and said, "I gave you plenty of room and all the dirt on top of it," and that Hoffman was lying partly under the Ford car, "trying to bury a bottle." Leonard C. Nelson, who was also riding in the truck, testified that he knew nothing after the collision until he regained consciousness; that the Ford car was then off the road and in the ditch on the northeast side of the road, about fifty yards to the rear of the truck; that he saw plaintiff in error and Hoffman there and that they were both intoxicated; and that plaintiff in error said, "You can do anything that you want to to me; I am a personal friend of Mayor Boutelle, and he will get me out of it."

Harry Goff, for the State, testified that just before the collision he was driving his car out of Galesburg toward Knoxville on the State highway and that the Ford car was ahead of him, going southeasterly, and that he saw it swerve as it went over the railroad crossing and then could not see it for a while because of the elevation of the railroad; that when he was crossing the railroad he saw that there had been a collision between the Ford car and the truck; that Hjerpe's truck was then on the shoulder of the highway, on the northeast side of the road; that the Ford car and plaintiff in error and Hoffman were off of

the highway altogether and on the northeast side of the road, and that the front wheels and radiator of their car were against the embankment on the northeast side of the road, and that both plaintiff in error and Hoffman were intoxicated to the best of his judgment. On cross-examination he testified that he was not acquainted with plaintiff in error or Hoffman and did not talk to them.

Four other witnesses for the State, Oral Ryan, State road patrolman, George P. Lincoln, an employee of the State highway department, Frank Wilkins, patrol driver for the police department of the city of Galesburg, and John W. Swickard, chief of police of the city of Galesburg, and the deputy sheriff of Knox county, testified that they were at the scene of the collision shortly after it happened and saw plaintiff in error and Hoffman, and that they were intoxicated and staggered when attempting to walk. Wilkins testified that plaintiff in error and Hoffman were "very much intoxicated," and that plaintiff in error was more so than Hoffman. The other three witnesses named in this paragraph all stated that they smelled the odor of liquor which "came from their breaths." Ryan testified that he heard the collision of the Ford car and truck, and that after the collision the Ford car was from fifty to seventy-five feet away from and in the rear of the truck; and that he saw the marks on the pavement where the Ford car ran, and that one of the marks was on the north side of the center of the pavement, or on the left side going toward Knoxville. Swickard further testified that when he got to the scene of the collision the Ford car was "nosed into the north bank of the road" and that plaintiff in error and Hoffman were both drunk; that they acted like drunken men, staggered around some, their tongues were thick and their eyes were bleary.

Four physicians testified for the State: J. C. Redington and C. G. Bower, who examined Allen's body after his death, and Lewis M. Tate and E. C. Franing, who attended

Allen after he was taken to the hospital. The first two testified that the chest and abdomen of Allen were practically normal, and that in their opinion he died from an embolus, caused by injury to his legs and feet. The last two testified that Allen's legs were mangled and six or seven bones were broken and that bones were sticking through the flesh; that he seemed to be in a healthy condition except for his injuries, which they treated and put the fractures in place; and that Allen died the following morning as a result of his injury, which caused a fat embolism, which was the direct cause of his death.

Plaintiff in error in his own behalf testified substantially as follows: He resided with his mother in Galesburg township and was employed by the Chicago, Burlington and Quincy Railroad Company as a switchman. On the afternoon of the collision he went with Hoffman, his cousin, from the home of his mother to the home of Abel Boyer to buy flowers to put on the graves of relatives at Knoxville. He saw Mr. and Mrs. Boyer at their home. They did not have the kind of flowers that he wanted and they directed him to the home of Harold Dunkle. He and Hoffman went to Dunkle's home and found that he did not have any flowers. They then started to Knoxville. They were in Hoffman's Ford automobile and witness was driving. He had driven this car perhaps twelve times. The railroad crossing just out of Galesburg was very rough. He slowed the car down at the crossing and was going about five or six miles an hour. He was driving on the southwest side of the road. He noticed the truck approaching. He was on the right side of the road and did not swing or zig-zag at any time in driving. The truck was traveling at a "pretty good rate of speed" but he had not thought of a collision. At the time of the collision he was driving "about fifteen to eighteen miles an hour." The front end of the truck passed the Ford car but its rear end struck the front end of the Ford car on the left front hub-cap and split the hub-

cap and bent the "wishbone" or braces under the front end of the Ford car so that it could not be steered and consequently went off the road into the ditch. The spokes of the front wheels of the Ford car were broken, the left fender was bent down and one of the lights broken. Witness was thrown across the steering wheel and his head went through the windshield. His wind was knocked out of him, one leg was cramped, and he was dazed by the impact of his head on the windshield. He got out of the car in a dizzy, dazed and stupid condition. He weaved a little as he went over to Hoffman, who had been thrown out into the ditch. Hoffman was dizzy and had a cut on his forehead. Witness was sober and had "had nothing to drink all day." Hoffman was perfectly sober. Witness had never in all his life known Hoffman to take a drink.

Frank E. Hoffman, a farmer, who was riding in the Ford car with Rewland, testified that at the railroad crossing the Ford car was not going over five or six miles an hour and at the time of the collision it was going probably sixteen or seventeen miles an hour; that he first saw the truck when it was 150 feet or more away and observed it approaching the Ford car; that it was moving at "a pretty good rate of speed—probably twenty-five or thirty-five miles an hour;" that when the truck got near the Ford car "it made a dip into the front" of the Ford and the back end of the truck struck the front end of the Ford; that witness' head was cut in the accident and he was made to feel "kind of queer;" that he had not been drinking spirituous liquor that day and was not intoxicated and was never intoxicated in his life; and that he did not attempt to hide a bottle under the Ford car and there was no liquor in that car.

The following witnesses testified for plaintiff in error: Mary E. Rewland, his mother, testified that on the day of the collision he and Hoffman left her home about three or four o'clock and were sober and had not been drinking. Abel Boyer, a switch-tender for the Chicago, Burlington

and Quincy Railroad Company, and his wife, Flora Boyer, testified that they are well acquainted with plaintiff in error and grow flowers; that on the afternoon of the collision plaintiff in error and Hoffman came to their home to buy flowers and left about 4:30 o'clock or later, and were sober. Harold Dunkle testified that plaintiff in error left his home on the afternoon of the collision at 5:14 o'clock; that he was sober at that time, so far as he could tell, and had not been drinking; and that witness is a switchman for the Chicago, Burlington and Quincy Railroad Company. Oscar Sandberg, a switchman for the same company, testified that he met plaintiff in error on that afternoon between two and three o'clock and rode with him in a car with a Mr. Metcalf; that they parted company shortly before four o'clock that afternoon and plaintiff in error was then sober. H. A. Springer testified that he was foreman of the Mackemer Motor Company and examined Hoffman's Ford roadster after the accident and that it could not be run over twenty or thirty miles an hour.

About twelve witnesses for plaintiff in error testified that they were acquainted with his general reputation for sobriety in the community in which he lived and that that reputation was good.

Plaintiff in error makes a number of contentions which he claims are grounds for a reversal of the judgment in this case and which in the main are merely technical objections. Among these objections are, first, that in no count of the indictment is the vehicle in which the deceased was riding or being conveyed more particularly described or designated than as "a certain motor vehicle, to-wit, an automobile." The word "automobile" is defined by our best lexicographers as a self-propelled vehicle. A motor truck is a self-propelled vehicle. Moreover, our statute construes the term "motor vehicle" to include automobiles, locomobiles, motor bicycles, tractors, traction engines, and all other vehicles propelled otherwise than by muscular power. If

it be conceded that there is a slight variance in the allegation that the motor vehicle of the prosecuting witnesses was an automobile and the proof that their vehicle was an automobile turned into a truck, the variation is so slight that it could not have misled plaintiff in error in making his defense and could not expose him to a second jeopardy, and the judgment should not be reversed on the ground alleged. *People* v. *Jennings,* 298 Ill. 286; *Clark* v. *People,* 224 id. 554.

The second contention of plaintiff in error, that the court should have instructed the jury that any evidence produced against Hoffman should not be considered in passing on the guilt or innocence of plaintiff in error, cannot be sustained. No such duty rests on a trial court in the absence of a request of the defendant to give such an instruction. (*People* v. *Darr,* 262 Ill. 202.) Plaintiff in error tendered no such instruction to the court.

The third contention of plaintiff in error, that the court erred in refusing to allow plaintiff in error to introduce evidence to prove the general good reputation of Hoffman for sobriety, is without merit. There was a *nolle prosequi* entered as to Hoffman by the People and thereafter there was no issue upon the question as to his sobriety or his good reputation, and that question could in no way affect the question whether or not plaintiff in error was guilty as charged in the indictment. Hoffman's general reputation for truth and veracity was in no way attacked by the People, and his general reputation for sobriety could have no proper place in the case after the suit was dismissed as to him.

In support of his motion for a new trial plaintiff in error presented an affidavit made by him to the effect that the attorney for the State was allowed to ask improper questions in his cross-examination of plaintiff in error's witnesses concerning his general good reputation for sobriety, and he urges that the court erred in overruling his

objections to such questions. It is a sufficient answer to this contention that the abstract of the record in this case does not contain an abstract of the cross-examination of such witnesses. In the brief for the People it is disputed that on such cross-examination the State's counsel asked the questions plaintiff in error contends were asked. We cannot decide these contentions by the abstract. It is not the right or province of plaintiff in error to determine or to make any part of the record by his own extraneous affidavit. The bill of exceptions signed by the court, together with the common law record, should constitute the complete record, including all the evidence and the rulings of the court with reference to the admissibility of any part of the evidence. It was also the duty of plaintiff in error to make a correct showing in his abstract of any rulings of the court as to the admissibility of evidence, and this court will not explore the record to determine the question whether or not the court committed error, on the mere statement of plaintiff in error in his argument in this court. (*People* v. *Yuskauskas,* 268 Ill. 328; *Jackson* v. *Winans,* 287 id. 382.) The abstract fails to show that there is any action of the trial court on his rulings on the alleged objections that may be reviewed by this court.

Another alleged error of the court is that it permitted the introduction of evidence by the People of the collision, and the circumstances that occurred before and after it, before proof was made that the deceased was killed as a result of the injury that he received in the collision. The order in which competent and relevant evidence is to be received is largely within the discretion of the trial court, and no judgment will be reversed because of the order in which evidence was introduced unless there is a manifest abuse of such discretion by the trial court. (*People* v. *Cunningham,* 300 Ill. 376.) This objection is trivial in character, and there is no sort of showing that plaintiff in error was prejudiced by such ruling.

The contention that the court erred in giving two instructions for the People and that the judgment should be reversed on that ground must be overruled. The instructions given to the jury correctly informed them of the law applicable to the case, and the instructions to which objections are made are not open to the criticisms made of them. Some of the instructions are faulty, but there is no showing that the court committed reversible error in giving instructions for the People.

The insistence of plaintiff in error that the court erred in refusing to give to the jury two instructions offered by him must also be overruled. The first of these instructions contains the statement, in substance, that if the jury found that the deceased had his feet and legs hanging outside of the body of the truck at the time of the collision and that he could have avoided injury if he had had his feet inside the body of the truck, "then it became and was his duty so to do in order to avoid accident in a collision, and the jury have a right to take such fact into consideration in arriving at your verdict." This suit is a criminal prosecution, in which the charge is that the defendant unlawfully and feloniously killed the deceased while driving his car on the public highway in a willful and wanton manner and without regard to the consequences that such willful and wanton conduct might produce to other travelers lawfully traveling on that highway. The question of the deceased's rights in the premises are not in question, and it would be monstrous to hold that plaintiff in error should be acquitted on a mere showing that he, the deceased, was not exercising ordinary care for his safety. The evidence contains no showing that the deceased had done anything to forfeit his life by the unlawful conduct of plaintiff in error charged in the indictment. There is no sort of merit in this contention. The other instruction of plaintiff in error requested the jury, if they found the plaintiff in error guilty, to specify in their verdict on what particular count

they so found. Plaintiff in error had no right to require the People to elect on which count of the indictment they would rely for conviction, and it was not the duty of the court, under the law, to give the instruction requiring the jury to specify the count upon which they found plaintiff in error guilty.

The final contention is that the verdict is not supported by the evidence and that when all the evidence is considered there is a reasonable doubt of his guilt. The evidence in support of the verdict of the jury is overwhelmingly against plaintiff in error's contention. This proposition requires no argument or further comment by this court. We have set forth substantially all the evidence in the case, and the jury were warranted thereby in finding that plaintiff in error was drunk while driving an automobile on the public highway, in violation of the statute of Illinois which provides that any person who shall drive or operate a motor vehicle upon any public highway in this State while drunk or intoxicated, shall on conviction thereof, for each offense, be punished by a fine of not more than $200 or by imprisonment in the county jail for a period of not exceeding sixty days, or both such fine and imprisonment. The jury were also warranted in finding that plaintiff in error was driving his automobile toward the crossing in question at a high rate of speed at a time when he was unable to see who was on the farther side of the crossing from him until he reached it. He was familiar with this crossing as his evidence shows, and we think the evidence fairly shows that by the willful and wanton conduct charged in the indictment, and by reason of his drunkenness, he lost control of his car and ran it against the truck when the truck was almost entirely off the cement slab of the road, and that Hoffman's and plaintiff in error's testimony corroborates the testimony of the People, which shows the facts to be as we have stated them. It does not matter whether the speed of the Ford car was shown to be twenty miles, thirty miles or forty

miles an hour. We think the evidence clearly shows that for some time before plaintiff in error's car reached the railroad crossing, and up to the time that it struck the truck, he was running it at its best speed in the reckless and wanton manner charged in the indictment while he was drunk and unable to properly control the car. This court has frequently held that the killing of a person on the highway by one driving an automobile in such a manner warrants the jury in finding him guilty of criminal negligence and of the crime of manslaughter. *People* v. *Falkovitch, supra; People* v. *Glasebrook*, 320 Ill. 567; *People* v. *Camberis*, 297 id. 455.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*