## DUNLAP v. UNITED STATES.
### No. 5100.

Circuit Court of Appeals, Seventh Circuit.
March 29, 1934.

36

W. St. John Wines, of Springfield, Ill., for appellant.

Frank K. Lemon, U. S. Atty., and Marks Alexander, Asst. U. S. Atty., both of Springfield, Ill.

Before EVANS and SPARKS, Circuit Judges, and WILKERSON, District Judge.

SPARKS, Circuit Judge.

Appellant, the president of the Ayers National Bank of Jacksonville, Illinois, and William Goebel, the cashier of the same bank, were indicted for making false entries in a book of the bank in violation of section 5209 of the Revised Statutes, as amended (12 USCA § 592). This section provides that "Any officer, director, agent, or employee of any Federal reserve bank, or of any member bank * * * who makes any false entry in any book, report, or statement of such * * * bank with intent in any case to injure or defraud such * * * bank * * * or to deceive any officer of such * * * bank, or the Comptroller of the Currency, or any agent or examiner appointed to examine the affairs of such * * * bank * * * shall be deemed guilty of a misdemeanor, and upon conviction thereof * * * shall be fined not more than $5,000 or shall be imprisoned for not more than five years, or both. * * *" Both parties were found guilty on four of the thirteen counts, including the thirteenth, a conspiracy count. A nolle prosequi was entered on one of the other counts, and as to the remaining counts, the court entered a directed verdict of not guilty.

The counts on which a conviction was had involved entries regarding the payment of interest on a certain note for $30,000 made by one Oscar Nelson, September 29, 1924, at which time he was the treasurer of the state of Illinois. The note was a demand one, payable to the bank, with interest at five per cent, signed by one D. M. Flynn to whom a check for $30,000 was made payable, signed by Andrew Russel, agent, who was a vice-president of the bank. Flynn had endorsed the check to Nelson. The record discloses that Nelson paid $5,000 on the principal on July 17, 1925, and it is not denied that the note was executed for his benefit or that the obligation was in fact his. Counsel for appellant admitted in his opening statement that this interest had never in fact been paid, claiming that the bank had a right to waive the interest on the note in view of the fact that at the time the bank was a depository for funds of the state, large amounts of which were kept there without payment of interest by the bank to the state.

Before this court appellant did not question the correctness of the conviction of Goebel, but argued that the evidence introduced

did not warrant appellant's conviction. He assigns as error generally the admission of evidence and the exclusion of other evidence, without, however, specifying the evidence at fault, or showing wherein the error lay. We have only his statement of contested issues and errors with references to the transcript of record, as given in his brief, upon which to consider his contentions.

The principal error has to do with the fact of insufficient proof of the corpus delicti. Appellant argues that apart from certain admissions of his co-defendant, there was no proof of the actual falsity of the entries with which they were charged. Upon the trial both defendants took exception to the introduction of these admissions in evidence before other proof of the alleged crime. There was no error in this, however, inasmuch as the order in which evidence is to be received is largely within the discretion of the trial court, and no judgment will be reversed because of the order in which evidence was introduced unless there was manifest abuse of such discretion. People v. Wolf, 334 Ill. 218, 165 N. E. 619; People v. Rewland, 335 Ill. 432, 167 N. E. 10. While it is true that the principal evidence relied upon by the Government lay in the admissions of the co-defendant and also of counsel for appellant that no interest was in fact ever paid, there is enough other evidence aside from that of the parties to justify the court in allowing the case to go to the jury. Oscar Nelson, the real maker of the note, testified that he had received the money for the loan of which the note in question had been given, and that he had never paid any interest on it, nor could he recall that any demand had ever been made upon him for payment of either the principal or the interest. He testified that he had paid the $5,000 which was endorsed on the back of the note as a payment on the principal. We think that the statement of the party who actually borrowed the money, that he never paid any interest on his loan, is sufficient direct evidence of the falsity of the entries as to payment of that interest, to permit the government to introduce the admissions of the parties charged with falsifying the entries, as corroborative evidence. In the case of Flower v. United States (C. C. A.) 116 F. 241, 247, the rule on this subject as follows: "A conviction cannot be had on the extrajudicial confession of the defendant, unless corroborated by proof aliunde of the corpus delicti. Full, direct, and positive evidence, however, of the corpus delicti, is not indispensable. A confession will be sufficient if there be such extrinsic corroborative circumstances as will, when taken in connection with the confession, establish the prisoner's guilt in the minds of the jury beyond a reasonable doubt."

Appellant raises two further questions, assuming the fact that there was sufficient evidence to warrant the conviction of the cashier, Goebel: (1) There was no proof that the entries were made with any criminal intent such as is necessary to constitute a crime under the statute invoked; (2) there was no proof that appellant had knowledge that the false entries were being made, or that he was in any way responsible for them. As to his first contention, we think that the government is correct in answering that it is inconceivable that there could be any other purpose or intent in the minds of those who brought about the false entries than to deceive the Comptroller or his agents. An examiner for the Eighth Federal Reserve District of which the Ayers bank was a member, testified that he had examined the bank four times during the period from December, 1929, to the spring of 1932, and had criticized the note in question in some of his reports, but had believed then that the interest had been paid, as noted on the note. Thus the effect of the false entries was to deceive the examiner, as it must have been intended by the persons responsible for them. It has been reiterated time and again that a person is presumed to intend the natural and probable consequences of his acts, and certainly it seems obvious that if false entries are made in the books of a bank, the examiner will be deceived by them. The statute does not render it necessary to prove the motive for such deceit, but merely makes it a misdemeanor for the party who makes the false entry with intent to deceive. It is a fair inference, however, that if the examiner had known that the interest had not been paid he would have ordered the note collected or charged off, and these no doubt were the things that appellant and his co-defendant wanted to avoid. It is quite certain that the examiner was deceived in this respect and that appellant and his co-defendant intended that he should be so deceived.

As to appellant's argument that he had no knowledge of the false entries, and was in no way responsible for them, we think that there was sufficient evidence from which the jury could find him responsible, apart

from the various admissions of his co-defendant, all of which the jury was instructed to disregard as to appellant. There was evidence of his active participation in all the affairs of the bank, and of his supervisory control over the matter of unpaid notes and interest. The officer who had charge of these matters testified that he periodically called the Nelson note to appellant's attention by placing before him the notice which it was customary to send out when any interest became due. He testified that on several occasions appellant told him that Goebel would take care of it, and that thereafter Goebel followed a regular practice of making certain charges against the bank for alleged expenses to offset the interest. Those charges were afterwards found to be fictitious. We do not understand the law to be that a principal can instruct someone under him to do a certain thing in an undisclosed manner, and then disclaim responsibility on the ground that his subordinate did not do the thing in the way he expected him to. The investigator who was assigned the duty of examining the bank after it closed testified as follows: "I invited his attention to the fact that Mr. Goebel had told me that Mr. Dunlap had instructed him to charge certain accounts and he said that he felt, in view of the fact that the note had resulted in the obtaining of State deposits for the bank, he felt that it was a proper charge to expense as an offset to the interest of the note. I then told him that certain of these charges indicated that the expense had been to specific individuals for repairs and so on, and he said that he had not instructed Mr. Goebel to do that. * * * I mentioned that Mr. Goebel had stated that he had instructed him to do that. He made, as I recall it no comment on that, except to say that he regarded the payment of the interest on the * * * Nelson * * * Flynn note, as a legitimate charge to expense. * * *" The same witness testified as to a further conversation with appellant in which he stated that Nelson had talked with him, and that he told Nelson that the bank did not want to charge him any interest. It

is not disclosed in what manner appellant desired the interest to be charged off, nor that he told Goebel how it should be done. If however, he desired that it should be charged to the expense account as waived interest, then no doubt the vice-president who notified appellant of the delinquency regularly could have attended to the charge quite as well as Goebel, and it could have been done immediately without Goebel's assistance. Of course that method would have disclosed to the examiner the actual status of the note, and we think it is reasonably inferable from the evidence that appellant and his co-defendant did not desire such fact to be made known to the examiner. Under the circumstances it is inconceivable that appellant was not aware of the method used by Goebel.

Neither appellant nor his co-defendant offered any testimony, and both entered a demurrer to the evidence. All of the foregoing evidence is therefore undisputed. It constitutes substantial evidence to support the finding that there was a crime committed, and that appellant participated in that crime.

It is argued that the court erroneously admitted evidence which pertained to the guilt of his co-defendant but was in no way connected with appellant. If it be conceded that such evidence was inadmissible as against appellant, it is sufficient to say that the court in each instance instructed the jury not to consider it as against appellant, and we find no error in this respect.

Other objections to the admission and exclusion of evidence were made, but a perusal of the entire record convinces us that they are without merit. The exclusions were of testimony clearly immaterial. The testimony of Mrs. Flynn with respect to nonpayment of interest, if erroneously admitted, was harmless because that fact was admitted by appellant's counsel in his opening statement to the jury.

Judgment affirmed.