People of the State of Illinois, Plaintiff-Appellee, v. David Ace Alexander, Defendant-Appellant.

Gen. No. 50,386.

First District, Third Division.
December 1, 1966.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Marshall A. Patner, Frederick F. Cohn and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James Zagel, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

In a jury trial the defendant was found guilty of arson and was sentenced to a term of one to five years in the penitentiary. He contends (1) that the State failed to prove the necessary intent; (2) that the court erred in allowing a witness to answer improper hypothetical questions; and (3) that it erred in refusing to give an instruction tendered by defendant with respect to flight. The facts follow.

Defendant was charged with setting fire to the apartment of Clara Martin with whom he had lived for six months prior to the event in question. The fire started shortly after 4:00 a. m. on September 1, 1963, and did extensive damage to Mrs. Martin's apartment and to other apartments in the building. Defendant was arrested on May 5, 1964. At that time he gave the police a signed statement in which he admitted starting a fire in the closet of Mrs. Martin's bedroom on the night in question, but denied that it was done intentionally. In the statement he said he was using his cigarette lighter to search for money in the closet when a neoprene clothes bag caught fire, that he stamped on the bag to put out the flames and shut the closet door to prevent the spread of the fire. He said the fire was extinguished when he left the premises. The written statement was admitted in evidence during the course of his cross-examination.

Mrs. Martin testified that she and the defendant had quarreled some days before the fire and that defendant had moved to a hotel, but that on the night in question he returned to her apartment to pick up certain belongings he had left there. Knowing that he was coming, she placed the items outside the door because she did not

153

want him to come in. Defendant insisted on being admitted and kicked 'in a door panel, and she then allowed him to enter because she wanted to avoid further disturbance of her neighbors. Inside the apartment, defendant became violent and hit and kicked her and she ran to a neighbor's apartment, returning about ten minutes later to find the apartment on fire. She further testified that some months earlier, defendant in a burst of anger had threatened to start a fire and had started to pile up papers in a closet preliminary to taking such action when he was restrained by a third person. She also stated that a few days before the fire, the defendant had severed her telephone wires.

George Healy of the Chicago Fire Department testified on behalf of the State that the fire had started in the bedroom area of the apartment, but that the exact place of its origin could not be pinpointed because of "the intense burning throughout the entire bedroom." He said that in his opinion had the fire been started in the closet, it could not have spread as it did unless the closet door had been open.

Joseph Bergan of the Chicago Police Department testified that he investigated the fire and learned from Mrs. Martin that she suspected the defendant; that she gave him defendant's description and information concerning his usual whereabouts, but had no known address for him and hence he (Bergan) and his partner were unable to locate the defendant in the neighborhood to which they were directed. He said a stop order for defendant was placed about a week or two after the fire. On cross-examination he testified that he had not looked for defendant at the two specific addresses which the defendant later testified were his permanent residences from the date of the fire until his arrest.

Defendant testified on his own behalf and in substance repeated the narration he had given the police with respect to the fire and the events preceding it. He further

testified that he learned of the fire about two days after it occurred, at which time he had heard that the police were looking for him and that he then went to the Racine Avenue Police Station, where he was told he was not wanted as a suspect for any offense. He further testified that he had been working in the city and was available for most of the time between the date of the fire and his arrest.

■ Defendant's first contention is that there was no showing that he intended to start a fire. The evidence establishes his presence on the premises immediately before the fire, his previous threat to burn the apartment and his violent encounter with Mrs. Martin that night. This evidence, although circumstantial, is very persuasive and was adequate proof of criminal intent.

Defendant's second point is that the hypothetical questions asked of the State's expert witness, Healy, were based on a fact not in evidence, that is, that the door to the closet was open. The questions propounded to the witness were as follows:

> "Q. Mr. or Fireman Healy, if a fire had been started in the closet and the door of that closet had been closed would that fire be able to spread through that apartment within a few minutes?
>
> Mr. Friedman: Object. Just a minute.
>
> A. No, it could not.
>
> The Court: It may stand."
>
> . . . . . .
>
> "Q. Based on your examination of this apartment, based on your experience with the fire department investigation unit, do you have an opinion as to whether or not the closet door in that apartment had been closed?

155

A. If the closet door was closed the fire would be confined to the closet. Whereas it was my opinion it was open, which spread out to the bedroom and to the living room."

At this point in the trial, there had been no direct testimony with respect to whether the closet door was open or closed, but counsel for the defense in his opening statement had stated that defendant had closed the door to extinguish the fire. Defendant's statement to the police, in which he had said that he closed the door was also later admitted in evidence. The State properly undertook to refute the defense position that the door was closed, and the deviation in the order of proof was not harmful error.

As to the propriety of the questions, it is true that a hypothetical question should be based on facts in evidence, but the questions in issue here were not hypothetical in the ordinary sense. The witness had personally investigated the fire and had seen that the entire bedroom area was gutted, and on the assumption that the fire began in the closet, a fact not in dispute, he stated his conclusion that the door must have been open or the fire would not have spread through the rest of the apartment as quickly as it did. The hypothetical questions did not rest on the assumption with respect to the door, but rather were framed in such a way as to elicit the witness's conclusion as to whether the door was in fact open or closed. Insofar as those questions were based on facts in evidence, that is, that the fire began in the closet and spread rapidly, the questions were proper.

Finally, defendant argues that the court erred in failing to give an instruction tendered by him with respect to flight. The instruction follows:

"Before the jury can consider flight by the defendant as a circumstance in determining the guilt or innocence of the defendant, the jury must be satis-

156

fied from the evidence beyond all reasonable doubt that the defendant did in fact flee from the scene where a crime was committed. And if the jury find from the evidence that he did not flee from the scene of the crime, but remained within this jurisdiction in the City of Chicago, then the jury are not justified in considering flight as a circumstance tending to show the guilt of the defendant."

Defendant argues that references by the police to their inability to find him were calculated to leave the impression with the jury that he fled the scene of the crime and that therefore he was entitled to an instruction negating this prejudicial effect. The State contends that it offered this evidence to explain the delay in bringing charges against defendant and that there is no issue of flight present in the case. We do not reach this question, however, because defendant's instruction improperly stated the applicable law in the following respects:

■■ The first sentence of the instruction says that the fact of flight must be proved beyond a reasonable doubt. This is error. The material allegations of an indictment must be proved beyond a reasonable doubt, but an incriminating fact or circumstance, such as flight, need not be so proved. People v. Dolgin, 415 Ill 434, 114 NE2d 389; People v. Jordan, 18 Ill2d 489, 165 NE2d 296.

■ Secondly, the instruction contained only a partial statement of the law, and no other instruction supplied the missing part. The jury was instructed only as to what it might consider if it found that defendant did not flee. There was no instruction as to the significance of flight if it found that he had fled. On this ground the instruction was properly refused. People v. Robinson, 14 Ill2d 325, 153 NE2d 65.

■ Finally, the instruction erroneously assumed that an individual could not have fled from the scene of the crime if he remained within the jurisdiction, and as defendant remained in the city, he was not in flight.

157

In People v. Autman, 393 Ill 262, 65 NE2d 772 (quoted in Words and Phrases under "Flight,") the court said that flight is:

> "[T]he evading of the course of justice by voluntarily withdrawing oneself in order to avoid arrest or detention, or the institution or continuance of criminal proceedings. The term signifies, in legal parlance, not merely a leaving, but a leaving or concealment under a consciousness of guilt and for the purpose of evading arrest."

It is consistent with this definition that an individual might remain within the jurisdiction and still have fled from the scene of the crime. The instruction offered was properly refused.

We find no reversible error in the trial of this case. The judgment will be affirmed.

Judgment affirmed.

SULLIVAN, P. J. and DEMPSEY, J., concur.