THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RAFAEL TELIO, Defendant-Appellant.

(No. 54516;

First District—September 14, 1971.

Gerald W. Getty, Public Defender of Cook County, of Chicago, (Fred Shandling, James N. Gramenos and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Terence J. Mahoney, Assistant State's Attorneys, of counsel,) for appellant.

Mr. PRESIDING JUSTICE LEIGHTON delivered the opinion of the court:

Defendant was charged with possession of heroin. A jury found him guilty and the court imposed a sentence of two to six years. He appeals. For reversal, defendant contends that (1) he was deprived of a fair and impartial jury when an assistant state's attorney, during cross-examination, asked whether a defense witness used narcotics, without proof that the witness was an addict or a user of drugs; and (2) he was denied equal protection of the laws and the right to examine the statements of a prosecution witness when the trial judge refused to compel an assistant state's attorney to give him the transcript of a pretrial motion to suppress evidence.

The record discloses that at about noon on June 18, 1968, police officers Richard McKelvey, Bernard Brown and Donald Dura went to execute a warrant which authorized search of the person of one Richard Compos and of the first floor apartment at 1731 West 17th Street, Chicago. As the officers approached the building, they saw defendant climb out of

a window of the apartment described in the search warrant. There is testimony by Officers McKelvey and Brown that they saw defendant throw a silver tinfoil package to the ground; that defendant ran a short distance but was apprehended; and that Brown picked up the package in which were three smaller tinfoil packets containing a white powder, later shown to be a narcotic drug, heroin.

Prior to trial, defendant made a motion to suppress evidence. In support of it he testified that on June 18, 1968, just prior to his arrest, he went to 1731 West 17th Street, stayed two or three minutes, bought a $20 cellophane package of heroin and left the apartment through a window. As he walked on West 17th Street near 1731, he heard someone shout. He turned and saw Officer McKelvey. Because of this, he took the cellophane package of heroin and ate it. McKelvey, according to defendant, "[g]rabbed me by the neck * * * tried to make me spit * * *" and then arrested him. After hearing defendant, McKelvey and Brown, the trial judge denied the motion to suppress.

Six days later defendant went to trial before a jury. McKelvey was the prosecution's first witness. After his testimony on direct, defendant's counsel (out of the jury's presence) told the trial judge that he detected an inconsistency in McKelvey's testimony; that the assistant state's attorney had a transcript of the trial judge's hearing of the motion to suppress; and that he needed the transcript to cross-examine McKelvey. The assistant state's attorney objected, saying that defendant was not entitled to the transcript because he could have purchased a copy. In response, defendant's counsel told the court that the price of the transcript was $58, an amount defendant could not pay. The request for the transcript was denied.

The trial proceeded. As his witness, defendant called Jessie Urbina who, when cross-examined by the assistant State's Attorney, was asked whether he used narcotics. Defendant's counsel made an objection which the court sustained. The assistant State's Attorney asked to be heard. In the colloquy that followed, it was admitted the State had no basis for the suggestion that Urbina was an addict or a user of drugs. The trial judge ruled that the question was improper. Nonetheless, at the State's insistence, and over defendant's objections, the trial judge agreed to instruct the jury that no further inquiry concerning narcotics would be made of Jessie Urbina but the question could be asked once more in the jury's presence. When this ruling was announced, the assistant State's Attorney told the trial judge that "I'll reduce the impact by asking the court reporter to read back the question." The trial resumed with the court reporter reading again to the jury the question asked Urbina whether he used narcotics and his negative answer.

Defendant contends that this cross-examination of Urbina infringed on his right to a fair and impartial jury. He argues that the question concerning use of narcotics contained a prejudicial and unsupportable insinuation which necessitates a new trial because of its effect on the jury. (*People v. Sanders,* 357 Ill. 610, 192 N.E. 697; *People v. Nuccio,* 43 Ill.2d 375, 253 N.E.2d 353.) To meet this contention the State argues that Urbina could have been cross-examined in order to bring out any unlawful activity or disreputable occupation which affected his credibility. *People v. Crump,* 5 Ill.2d 251, 125 N.E.2d 615.

■ It is an elementary rule of trial procedure that for the purpose of impeachment, a witness may be cross-examined concerning his drug addiction in order to disclose a matter affecting his credibility. (*People v. Dixon,* 22 Ill.2d 513, 517, 177 N.E.2d 224.) However, a foundation must be laid; and, once this is done, it is incumbent on the party who lays the foundation to offer proof of what is insinuated or suggested in the impeaching cross-examination. (*People v. Irish,* 77 Ill.App.2d 67, 222 N.E.2d 114 and see *People v. Brown,* 76 Ill.App.2d 362, 222 N.E.2d 227.) Failure to do so can, in a proper case, result in infringement of the right to a fair trial. (*People v. Williams,* 105 Ill.App.2d 25, 245 N.E.2d 17.) Therefore, it was improper for the assistant State's Attorney to ask Urbina whether he used narcotics without being able to prove that he was an addict or a user of drugs. The trial judge erred in allowing the question and its answer to be read to the jury. See *People v. Fiorita,* 339 Ill. 78, 170 N.E. 690.

Defendant also contends that refusal of the trial judge to compel production of a transcript of McKelvey's testimony during hearing of the motion to suppress denied him equal protection of the laws and deprived him of the right to examine the statements of a prosecution witness. The theory of this contention is that the contents of the transcript impeached McKelvey's testimony before the jury.

The transcript in question was in the courtroom when it was requested by defendant's counsel before the cross-examination of McKelvey. The assistant State's Attorney who had the transcript objected to its production because defendant had no right to it; and, in any event, "[h]e does have the facilities to go to the court reporter to obtain that same transcript or a copy thereof (sic)." After hearing argument of counsel concerning the transcript and defendant's indigency, the trial judge refused defendant's request.

■■ It is now part of our criminal jurisprudence that, for use in impeachment, a defendant is entitled to prior recorded statements of prosecution witnesses, transcripts of grand jury testimony and reports. (*People v. Holiday,* 47 Ill.2d 300, 265 N.E.2d 634.) It has been held that denial

to an indigent defendant of a transcript of prior mistrials is a deprival of equal protection of the laws. (*People v. Miller*, 35 Ill.2d 615, 221 N.E.2d 653.) And without elevating the claim to a constitutional level, the Supreme Court has said that after a proper showing of its existence and pertinency, it is reversible error to deny a defendant use of a grand jury transcript which he needs for the impeachment of a witness. (*People v. Johnson*, 31 Ill.2d 602, 203 N.E.2d 399.) In a long and consistent line of decisions, that court has held it is reversible error to deny a defendant access to statements of prosecution witnesses, properly shown to exist and related to impeachment purposes. *People v. Moses*, 11 Ill.2d 84, 142 N.E.2d 1; *People v. Wolff*, 19 Ill.2d 318, 167 N.E.2d 197; *People v. Cole*, 30 Ill.2d 375, 196 N.E.2d 691; *People v. Neiman*, 30 Ill.2d 393, 197 N.E.2d 8; and *People v. Allen*, 47 Ill.2d 57, 264 N.E.2d 184.

■■ The trial of a criminal case is not a poker game with each side holding its best cards close to the vest. It is, as are all trials, a search for the truth. One of the primary objects of this search is determination of the credibility to be given the testimony of a witness. Bearing this objective in mind, it is unseemly for the transcript of a witness' testimony to be in the courtroom, capable of production without inconvenience or delay, and a good-faith request for its use for cross-examination refused on technical differences, many though they be, between the transcript of a hearing before a grand jury and the transcript of a hearing before a trial judge, or on the more abstract nuances of poverty or affluence. Moreover, the conclusion we deduce from the cited cases is that defendant was entitled to the transcript: it contained the statements of a witness. Therefore, the trial judge erred in refusing defendant's request so that his lawyer could use the transcript in cross-examining McKelvey.

As to his contentions, we have reached the conclusions defendant has urged upon us. However, we observe that on two occasion (during hearing of the motion to suppress and before the jury when he unsuccessfully tried to prove entrapment) defendant testified that on June 18, 1968, shortly before he was arrested, he went to 1731 West 17th Street, Chicago, purchased and carried away a quantity of heroin. This is the offense with which he was charged. These testimonies were confessions.

■■ A confession is a voluntary acknowledgment of guilt after the perpetration of an offense. Confessions are classified as judicial or extrajudicial. A judicial confession consists of a plea of guilty or some similar action or conduct in court or in a judicial proceeding. (*People v. Manske*, 399 Ill. 176, 77 N.E.2d 164.) A voluntary judicial confession, by a competent person, is of convincing character and is the highest kind of evidence known to the law. (*People v. Green*, 17 Ill.2d 35, 160 N.E.2d 814.)

The testimony of the defendant on both occasions was a judicial confession. *Brumit v. State,* Fla. 1969, 220 S.2d 659.

■■ In addition, there was the testimony of the three arresting officers, corroborated by facts and circumstances shown in the record. For these reasons, we conclude that the errors committed during defendant's trial do not require reversal of the judgment. It is affirmed.

Judgment affirmed.

SCHWARTZ and McNAMARA, JJ., concur.