THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HARVEY MONTGOMERY, Defendant-Appellant.

(No. 57998;

First District (1st Division)—December 3, 1973.

Frederick F. Cohn, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis and Jerald A. Kessler, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

Harvey Montgomery (defendant) was indicted for rape (Ill. Rev. Stat. 1971, ch. 38, par. 11—1), deviate sexual assault (Ill. Rev. Stat. 1971, ch. 38, par. 11—3) and armed robbery (Ill. Rev. Stat. 1971, ch. 38, par. 18—2.) A jury found him not guilty of rape and deviate sexual assault but guilty of armed robbery. He was sentenced to the penitentiary for five to 20 years.

In his appeal to this court, he contends:

1. The evidence is not sufficient to support the conviction beyond reasonable doubt;

2. The trial court erred in preventing him from testifying to his reasons for a certain activity and in permitting the prosecutor to argue to the jury the failure of defendant to explain this very activity;

3. The court erred in preventing him from presenting evidence of his reputation for truth and veracity; and

4. The sentence should be reduced.

The evidence shows that two friends of the complainant drove her to her place of residence at about 5:30 in the morning and left. She testified that defendant, whom she had never previously met, accosted her, entered the building with her, told her that he also lived there and then forcibly entered her apartment after she had unlocked the door. She testified that defendant was armed with a steak knife with which he threatened her and held against her until she complied with his demands to undress. An act of rape, regarding which defendant was acquitted, was allegedly committed at that time. Defendant then took the complainant into the bathroom where he made her douche and use a vaginal suppository. The complainant further testified that thereafter defendant took five single dollar bills, 15 bus tokens and some change from her purse and put these items in his pocket. He then picked up a ceramic or pottery bank, emptied the change therefrom and put this into his pocket. She also testified that defendant then again threatened her with the knife and compelled her to perform additional sexual acts. Defendant then fell asleep.

Complainant further testified that she put on her robe, locked the apartment door from the outside and ran downstairs to a neighbor where she made a complaint of rape. She was examined at a hospital but there was no evidence of sperm or laceration. The police were called and entered the building. They unlocked the door to complainant's apartment with the key she had given them but found the door secured by the chain on the inside. When the police announced their office, the door was slammed shut. They testified that they broke in and defendant ran toward the window and kicked out the screen. At that time, he had a knife in his hand. Defendant then jumped out of the window to the roof of an adjacent garage. Under command from the officers, he dropped the knife and was taken into custody. A search and police inventory evidence showed that in one of the defendant's pockets he had five single dollars, a quantity of small change and 15 bus tokens. In another pocket, he had currency exceeding $200. Investigation showed defen-

dant's fingerprints on the ceramic bank and on the sill of the window through which he had jumped. There is no evidence regarding testing of the knife for fingerprints.

Defendant testified that he had known the complainant for one and a half or two years and that he had spoken to her some 12 or 13 times before the date of this episode. He had visited complainant in her apartment on some five or six previous occasions. He stated that he had not seen her at the elevator but that he "buzzed" the apartment door and complainant invited him in to wait for her boyfriend. He denied armed robbery or any robbery, denied that he ever had the knife in his possession and denied that he had fastened the door with the chain. He denied that he had taken the contents of the ceramic bank but stated that he had handled it during his visit. When the police entered the apartment, they found the bank lying on the floor in the middle of the room. He testified that he had no bus tokens in his possession and that he kept his currency in one pocket and his change in another. Defendant also testified that some six months after the occurrence, he met the complainant at a bar and she asked for $500 in return for dropping the charges against him.

A friend of defendant testified that she saw defendant and the complainant in this bar at the time in question sitting together but did not hear the conversation. The complainant denied defendant's version of this incident and denied that she had ever been in the bar. A friend of complainant corroborated her testimony that they had been together on the evening in question and that she, accompanied by a male friend, had driven complainant to her home. There is also police testimony that defendant stated shortly after the occurrence that he met the complainant at a restaurant that night and that she had then invited him up to the apartment.

We will first consider the sufficiency of the evidence. The record showed beyond reasonable doubt that defendant took possession of certain property of the complainant. The complainant testified directly and postively that defendant took five single dollars and 15 bus tokens from her purse and that he also took a quantity of change from the ceramic bank. This testimony is strongly corroborated by the police search and inventory showing that defendant had five single dollars, some small change and 15 bus tokens together in one pocket. Defendant's general denial of these facts is hardly sufficient to raise a reasonable doubt.

Further corroboration is found in the presence of defendant's fingerprints upon the coin bank and the fact that the bank was found lying on the apartment floor. Defendant's statement that he did not put the chain on the door is another instance in which his testimony is dis-

credited by obvious physical facts. There may be discrepancies and issues of credibility on both sides but certainly the ultimate fact that defendant took possession of this property with intent criminally to deprive complainant thereof has been proved beyond a reasonable doubt. We also note here that in this aspect of the evidence, the testimony of the complainant is strongly corroborated by a number of factors. Her testimony regarding rape is corroborated only by her spontaneous complaint to a neighbor and tends to be negated by the absence of medical evidence. The testimony as to deviate sexual assault also lacks corroboration. Although logical consistency of the verdicts is not necessary for affirmance of the judgment (see *People v. Joyner,* 50 Ill.2d 302, 308, 309, 278 N.E.2d 756 citing *People v. Hairston,* 46 Ill.2d 348, 362, 263 N.E.2d 840), we find these verdicts consistent from that point of view. We cannot agree with defendant's argument that acquittal of the two sexual crimes has bearing upon the verdict of guilt of armed robbery.

■■ The Supreme Court of Illinois has held that there is no basic inconsistency where a jury finds a defendant not guilty of rape but guilty of robbery. "Rape and robbery are separate and distinct crimes, each having specific elements which must be proved beyond a reasonable doubt in order to support a conviction." (*People v. Harper,* 50 Ill.2d 296, 300, 278 N.E.2d 771.) We cannot agree with the attempt by defendant's counsel to differentiate *Harper* from the case before us. Basically the two situations are quite the same in that the testimony regarding the alleged sexual crimes is weaker than the evidence regarding the robbery. In *Harper,* the deficiency arises from the complainant's own testimony regarding the alleged rape. In the instant case, the differentiation between the degrees of sufficiency of evidence of the two crimes springs from the fact that there is ample corroboration of the crime of robbery; very slight corroboration of the rape and no corroboration of the testimony regarding deviate sexual assault. Furthermore, no person can state with certainty why the jury came to their result. It is pure speculation to attempt to state their reasoning. All that can be said with assurance is that the verdicts were both logically and legally consistent.

In addition, another cogent and important factor must be noted. Defendant elected to take the stand in his own defense. His credibility must therefore be judged by the same general rules pertaining to other witnesses. When he took the witness stand he assumed "the risk of being disbelieved." (*People v. Davis,* 71 Ill.App.2d 300, 306, 218 N.E.2d 850 and other cases therein cited.) Defendant here was undoubtedly present at the scene and since he elected to explain this it was "\* \* \* incumbent upon him to tell a reasonable story or be judged by its improbabilities." (*People v. Morehead,* 45 Ill.2d 326, 330, 259 N.E.2d 8.) De-

fendant denied that he had taken possession of coins, five single dollars and 15 bus tokens from complainant's purse. There is unimpeached police testimony that all of these items were found in one of defendant's pockets when he was searched. Defendant's denial that he had possession of the knife is contradicted not only by the complainant but also by credible police testimony. Defendant's denial that he closed the chain on the inside of the apartment door is negated and overcome by the physical fact that the complainant could hardly have secured the chain after leaving from this door and locking it from the outside. The final element which operates against the credibility of defendant is that he told the police shortly after the occurrence that he met the complaining witness at a restaurant that night and that she invited him up to her apartment. His testimony under oath at trial was quite different. This gives a special reason to the trier of fact to disbelieve his explanation. (See *People v. Morehead,* 45 Ill.2d 326, 330, 259 N.E.2d 8.) Nor can counsel for defendant rehabilitate him by pointing to testimony by the complainant that defendant searched the apartment for money; asked about her television set, but she told him that it did not belong to her, and then asked her for a check but she told him that he would be unable to cash it. Defendant's argument that these are strange circumstances must fall when it is considered that defendant did not at any time deny this testimony by the complainant.

In the case before us, the complaining witness testified that defendant was armed with a knife and that he still had the knife in his hand when he took the money from her purse and the coins from the ceramic bank. Despite the lack of a test for fingerprints on the knife, its use by defendant is corroborated by the testimony of the officers who saw defendant with the knife in his possession and saw him drop it at their command when he was standing on the garage roof below. In this type of situation, we must be guided by *People v. Elam,* 50 Ill.2d 214, 278 N.E. 2d 76. The defendant there boarded a bus and when standing behind the driver pressed against his back and told him that he had a gun. He took currency from the driver and then ran. He was shortly apprehended but no gun was found upon his person. He was, however, armed with a knife. The Supreme Court set forth the language of the Criminal Code defining robbery and armed robbery. (Ill. Rev. Stat. 1971, ch. 38, pars. 18—1 and 18—2.) The court held that the knife was a dangerous weapon and that the mere possession thereof by the accused at the time of the robbery was sufficient basis for guilt of armed robbery "even though the weapon itself was neither seen nor accurately described by the victim." (50 Ill.2d at 220.) The case before us is stronger than *Elam* in that the knife was seen and described by the victim and, according to her version,

she was actually threatened by the weapon several times. The defendant was observed by the police to be in possession of the knife which he dropped only at their command.

■■ As regards the verdict of guilty of armed robbery, we find only issues of credibility in which the degree of evidence produced by the State is so strong in favor of guilt that we can have no reasonable doubt whatsoever regarding the propriety of this verdict. In this type of situation, it is "axiomatic" that we may not disturb the verdict of the jury. (*People v. Glover*, 49 Ill.2d 78, 84, 273 N.E.2d 367.) The evidence is strong and convincing beyond a reasonable doubt to support the verdict of armed robbery.

We will next consider the alleged trial errors urged by defendant for reversal. On direct examination of defendant, his counsel asked him:

"Q. Now, why did you jump out of that window?"

Q. What caused you to jump out of that window?"

General objections made by the prosecutor to both of these questions were sustained and the trial court suggested that counsel for defendant put another question, "something other than the mental process." No offer of proof was made by defendant as to what his testimony might have been in response to these questions. Defendant urges that this was error which was compounded by final argument of the prosecutors and the instructions of the court.

■■■ Discussion of this point must commence with the premise that the above questions put to the defendant were basically proper. Evidence of flight is competent to be considered with all of the other evidence as tending to prove guilt. The theory is that evidence of flight is actually evidence of consciousness of guilt and therefore it is "probative of guilt itself." (See *People v. Smith*, 127 Ill.App.2d 199, 205, 262 N.E.2d 165.) However, the issue here is not defendant's objective conduct, which is conceded, but his subjective intent at the time he performed the physical acts in question. A defendant in this situation should have the privilege of supplying other evidence which may constitute an explanation of his flight. (See *People v. Keller*, 128 Ill.App.2d 401, 405, 263 N.E.2d 127.) The comment made by the trial court informed defendant's counsel in advance that the mental state of his client would not be considered. In this regard, we reject the analogy submitted by the State to the effect that evidence of flight is not linked to intent as is the situation with cases involving self-defense. The theory applied by this court in the recent decision of *People v. Dixon*, 10 Ill.App.3d 1038, 295 N.E.2d 556 involving self-defense is applicable to the case at bar so that evidence of defendant's mental state at the time he fled from the scene was competent and proper.

However, we do not believe that this erroneous ruling requires reversal of the judgment for the following reasons. The theory by which defendant attempted to account for his flight is shown by his cross-examination of two police officers. Defendant's counsel asked one officer that, if it was not true, "on the south side of Chicago, that when somebody knocks on the door and answers that they are police officers, that the first reaction is to get away by the people inside?" The court sustained an objection to this question by the prosecution and directed that it be stricken. Defendant's attorney then asked if the officer ever had any cases where he had knocked on the door and announced his office and the people ran. The officer replied, "Yes, sir, I definitely have." The attorney then asked if this happened quite frequently. The officer stated that he would not be prepared to judge the degree of frequency, "but it has happened." The attorney then asked if people in this situation "are a little bit scared when it happens and they run, is that right?" An objection to this question was sustained.

In cross-examination of the second officer, defendant's counsel brought out that he had had occasion to knock on the door and the people ran. In response to further questions, the officer testified without objection that he would not say that this was frequent or that just as many ran as not, but that this did happen. The question was then put to him as to whether this does not happen more in the area in which the complainant lived than it did in Evanston (a suburb to the north of Chicago) or Rogers Park (an area on the north side of Chicago). The officer replied that he had never been stationed in these two areas and did not know the answer.

This evidence, which was all duly placed before the jury, indicates defendant's theory that he fled and jumped from the window because he feared the police. The record thus removes the basis for defendant's argument that the instruction of the jury prejudiced him when the court stated that testimony which had been stricken should be disregarded by the jury. (IPI-Criminal No. 1.01.) We note also in this regard that in accordance with the recommendation of IPI no instruction was given to the jury on the evidence of flight. See IPI-Criminal No. 3.03 at page 22.

Similarly we have carefully examined all of the closing arguments. We have concluded that both sides commented upon the flight by defendant with equal vehemence. The State commented that there was no logical explanation for defendant's flight and counsel for defendant justified the flight by the fact that defendant knew that the garage roof was two flights below complainant's apartment. He also commented to the jury that there "are many people that would rather jump two flights than

be arrested by the police." An objection to this last argument was over-ruled by the court. However, the arguments on this issue took only a minute fraction of the entire time devoted by both sides to their closing argument.

■■ In addition, in the case before us, evidence of the flight was, "* * * at most an incriminating circumstance and not a material ele-ment of proof." (*People v. Hurley*, 100 Ill.App.2d 167, 170, 241 N.E.2d 318 citing *People v. Alexander*, 77 Ill.App.2d 151, 157, 222 N.E.2d 172.) The remaining direct evidence of guilt was strong and convincing be-yond reasonable doubt. In contrast with this, the defendant's own testi-mony was quite thoroughly discredited. In a situation of this type, we are able to say that the minute error committed by rejecting the answers to the two questions above stated was harmless beyond a reasonable doubt. (See *People v. Cole*, 54 Ill.2d 401, 406, 298 N.E.2d 705, concerning various exhibits improperly received in evidence; *People v. Farnsley*, 53 Ill.2d 537, 546, 293 N.E.2d 600 dealing with the propriety of three given instructions and *People v. Telio*, 1 Ill.App.3d 526, 529, 530, 275 N.E.2d 222 dealing with erroneous refusal to permit counsel for defendant to use a transcript of testimony before the grand jury for cross-examination.) Even in cases involving serious constitutional questions, the reviewing courts of Illinois have never hesitated to invoke the doctrine of harmless error in an appropriate situation. (*People v. Brown*, 51 Ill.2d 271, 273, 281 N.E.2d 682 involving pretrial confrontation and an in-court identi-fication of defendant, and *People v. King*, 4 Ill.App.3d 942, 944, 282 N.E.2d 252, involving violation of defendant's constitutional right against self-incrimination.) This principle is decisive of the case before us. We readily reach the conclusion that the error in question was harmless beyond reasonable doubt.

Defendant called a character witness who testified that she knew him for six years and that he had lived in her home for almost two years. She then testified regarding her good opinion of the defendant as regards his reputation for truth and veracity.[1] Counsel for defendant then asked the witness for the basis of her opinion. The trial court sustained an ob-jection.

Testimony of character witnesses regarding truth and veracity must be based upon the general reputation of the defendant as distinguished from personal opinion of the witness or specific instances of alleged acts

---

[1] No point is raised in the briefs regarding competency of evidence of good reputa-tion of the defendant for truth and veracity in a prosecution for armed robbery. Compare *People v. Jinkins*, 82 Ill.App.2d 150, 156, 225 N.E.2d 657 citing *People v. Kendall*, 357 Ill. 448, 456, 457, 192 N.E. 878.

by the defendant as basis for the opinions. (*People v. Wendt*, 104 Ill. App.2d 192, 205, 244 N.E.2d 384.) In the case before us, the witness showed the only permissible basis for her testimony by testifying to her contacts in the area in which both she and the defendant resided. The court correctly excluded additional testimony from the witness regarding the basis for her opinion because the only proper foundation had already been demonstrated. It was not permissible for counsel for defendant to attempt to show the basis for her testimony by means of her own personal knowledge or observation. (See *People v. Reeves*, 360 Ill. 55, 65, 195 N.E. 443.) We find no reversible error in this record.

■■ Defendant's sentence should be governed by the Illinois Unified Code of Corrections (*People v. Chupich*, 53 Ill.2d 572, 584, 295 N.E.2d 1; *People v. Harvey*, 53 Ill.2d 585, 589, 590, 294 N.E.2d 269.) Under the Code, armed robbery is a Class 1 felony with minimum term of four years, subject to the discretion of the court with regard to the nature and circumstances of the offense. (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1005—8—1(c) (2).) However, when defendant was sentenced the minimum term open to the court was five years. Defendant had a good employment record and no former felony conviction. The minimum sentence will be reduced to four years with a maximum remaining at 20 years as fixed by the court. As modified, the judgment is affirmed.

Judgment affirmed as modified.

EGAN and HALLETT, JJ., concur.