THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ENICH CHANEY, Defendant-Appellant.

(No. 58559; 

First District (2nd Division)—March 31, 1975.

George C. Howard, and Allan A. Ackerman, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago, for the People.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

A three-count indictment charged Enich Chaney with burglary, aggravated assault and attempt to murder. He was found guilty by a jury and sentenced to serve concurrent terms of 8 to 24 years for burglary, 8 to 20 for aggravated assault and attempt to murder. In this appeal, the issue he presents is whether failure of the trial court to require the State to disclose the identity of an informer was prejudicial error. .

On January 3, 1971, between 11 and 11:30 P.M., Sergeant William E. Higgins of the Chicago Police Department received a telephone call from Charles Holt. Higgins did not know Holt; but an hour later, he and a detective met with Holt in a restaurant where they talked for about 10 or 15 minutes. Holt told Higgins that between 10 and 11 A.M., later that morning, Enich Chaney was going to burglarize an apartment on the 28th floor of 1300 North Lake Shore Drive. Following this conversation, Higgins, the detective, and Holt went to the apartment in question, inspected it and talked with the apartment owner, Ralph Applegate, Jr. From the conversation he heard between them, Higgins determined that Holt was familiar with some personal details about Applegate. A short time after his visit, Holt went home, agreeing with Higgins that "[i]f he had to go [with Chaney to the burglary] he [Holt] was to drive the car." Higgins and the detective returned to their duties.

Later that morning, at about 8:30 A.M., Higgins was in charge of an eight-man police stakeout around the building at 1300 North Lake Shore Drive. Two officers were posted outside; two were inside the first floor entrance; four, including Higgins, were in Applegate's apartment on the 28th floor. Each unit of the stakeout was equipped with walkie-talkie radios that enabled the officers to remain in constant touch with each other. In addition, the building had a security system that consisted of two guards on duty and a closed-circuit television channel that monitored everyone who entered or left the building.

At approximately 11 A.M., the officers on the 28th floor received a radio transmission which told them that two men were entering the building. A few moments thereafter, an officer inside the Applegate apartment heard a metal against metal scraping sound outside. The door was opened; it was Chaney in the company of another man. According to the officers, Chaney had a gun which he pointed at Higgins and a scuffle ensued. Chaney was subdued and placed under arrest but, in the process, was injured by the officers. The man who was with Chaney disappeared.

Chaney was taken to a nearby hospital for treatment and then to a

police station. There, he told the officers that the man with him was Charles Holt. Two officers who evidently knew where to find Holt were immediately sent out and brought him to the station where he and Chaney confronted each other. One of them heard Chaney say to Holt, "Tell them. Tell them we were to visit some girls. Help me." Holt, however, was heard to respond, "I wasn't with you." Holt was then taken from Chaney's presence to another room where he was questioned by Higgins and later signed a three-page statement. In it, Holt admitted knowing that Chaney was going to the building at 1300 North Lake Shore Drive; that he was the informer who had met with Higgins and the detective the night before; that he had gone to the apartment to inspect it and talked with the apartment owner; that after talking with Higgins, he had agreed to go with Chaney to 1300 North Lake Shore Drive "* * * but only to get information out of him"; and that he had agreed either with Higgins or some other police officer that he was to go with Chaney on what he said was to be a burglary only if he were forced, in which event, "* * * I was to duck out someway." The statement was typed by Higgins and it remained a part of the police files of the case.

Two days after his arrest, without a preliminary hearing, Chaney was indicted for the burglary of the Applegate apartment, aggravated assault on and the attempt to murder Higgins. He appeared in the case with counsel of his choice and was furnished with a list of the State's witnesses. Holt was not named among those who were expected to testify for the State. Later, under the authority of Supreme Court Rule 413(d),[1] the prosecution demanded of Chaney that he furnish "[t]he names and last known addresses of persons he intends to call as witnesses together with their relevant written or recorded statements, including memoranda reporting or summarizing their oral statements * * *." Chaney's counsel responded to the demand and informed the State that Charles Holt was one of two persons defendant was going to call as his witnesses.

· Six months after this information was furnished, Chaney was brought to trial before a jury. In his opening statement, Chaney's counsel stated his theory of defense was Chaney's claim that he was lured to 1300 North Lake Shore Drive the morning of January 4, 1971, by Chicago policemen acting through someone who was an informer. He told the

---

[1] Supreme Court Rule 413 (Ill. Rev. Stat. 1971, ch. 110A, par. 413), providing for discovery by and disclosure to the prosecution, was adopted by the Supreme Court and became effective October 1, 1971 during the 18-month period that Chaney was awaiting trial.

jury that defendant's evidence was going to show the basis for this claim. Thereafter, the State put on its case.

The prosecution witnesses were Higgins, four of the stakeout officers and Applegate, the apartment owner. All of the officers, including Higgins, either expressly told the jury or alluded to the fact that the stakeout at 1300 North Lake Shore Drive the morning of January 4, 1971, was put there because, the evening before, Higgins had received certain undisclosed information from an informer. When the officers were asked to name the informer, the State objected, invoked the informer privilege and argued that it had the right to withhold disclosure of the informer's identity. The trial court sustained the objections, ruling that the State had the right to withhold from the defendant the identity of the informer. As a result, when the State completed presentation of its case, the defense did not know the name of the informer who, according to the prosecution, told Higgins the night before January 4, 1971, that the burglary in question was going to be committed.

Chaney began his defense by calling his mother who testified concerning certain conduct of Higgins and other Chicago policemen in searching her home and in their attitude toward her son. Then, Chaney testified and told the jury that on the morning of January 4, 1971, Charles Holt came to his home and with his mother present, they had a conversation. When Chaney attempted to tell the jury what Holt said to him, the State objected; the objections were sustained.

Thereafter, Chaney testified that following their conversation, he and Holt entered his automobile; and, at Holt's direction, he drove to 1300 North Lake Shore Drive. Holt entered the building telling Chaney that they were going to the 34th floor. However, Chaney said that the elevator, for a reason unknown to him, stopped on the 28th floor where he was accosted by police officers who arrested him. He denied he went to the building to commit a burglary; he denied he had possession of any gun with which he attempted to assault Higgins or to murder him; and he denied he had possession of any screwdriver with which he attempted to enter the apartment in question. After his testimony was completed, Chaney called Holt to corroborate his testimony.

Holt testified that on the morning of January 4, 1971, he went to Chaney's home when, in the presence of Chaney's mother, they had a conversation. Thereafter, the two of them left in Chaney's automobile and drove to 1300 North Lake Shore Drive. When they arrived there, they entered the building and took an elevator that stopped on the 28th floor. They went to an apartment which was the wrong one; and, as they were attempting to return to the elevator, police officers came out of the apartment and arrested Chaney. Holt said he got away. He told the

jury that when they went to the building, Chaney did not have a gun, nor did he have any screwdriver in his possession. Later, Holt said he was arrested and taken to the police station where he was confronted with Chaney. He admitted that in the presence of police officers he had denied to Chaney that they were together that morning on the 28th floor of 1300 North Lake Shore Drive. Holt said that before making the denial he had observed Chaney's injured condition. Then, Holt was cross-examined by an assistant State's attorney.

He was asked if he knew any of the officers he saw arrest Chaney. Holt said he did not. He was then asked if he was not, in fact, the person who had altered Higgins to the anticipated burglary of the Applegate apartment. Holt denied being the person. He was asked if he had not told Higgins that Chaney, on the morning of January 4, 1971, had a gun and a screwdriver in his possession. Holt denied making these statements. Thereupon, the assistant State's attorney produced the three-page statement Higgins had taken from Holt the evening of January 4, 1971, in the police station. He gave defendant's counsel a copy. Upon reading it, counsel told the court that, for the first time, the defense had learned that Holt was the informer whose identity the State had refused to disclose by asserting the informer privilege. The lawyer complained that the State's invoking of the informer privilege and its withholding the three-page statement had maneuvered Chaney into calling the State's informer as his witness. He moved for a mistrial. The motion was denied. A moment later, counsel asked for leave of court to question Holt as if he were under cross-examination because he was a hostile witness. The motion was denied. Thereafter, Holt's cross-examination continued with questions that brought his entire statement before the jury. Then Higgins was called by the State as a rebuttal witness. He told the jury that Holt was his informer; that, contrary to Holt's testimony as defendant's witness, Holt, in giving the three-page statement, told him that Chaney, when he went to 1300 North Lake Shore Drive, was armed with a gun; had a screwdriver in his possession and went to the building to commit a burglary. Through the rebuttal testimony of Higgins, the State impeached Holt and again placed before the jury the entire statement he had made in the police station.

It should be noticed that in this case, had the State so decided, Holt could have been one of its witnesses. He was the only person to whom Chaney allegedly confided the plan to burglarize the Applegate apartment on the 28th floor of 1300 North Lake Shore Drive. He alerted Higgins to the anticipated crime, met him and a detective to discuss it, went to the apartment to inspect it and brought about the eight-man police stakeout that was thrown around the building in question. He,

according to his three-page statement, agreed with Higgins to go with Chaney on the burglary to obtain information, if he were forced; and, in that event, duck out of the enterprise.

Chaney's defense was that Higgins and the other policemen, using an informer, had lured him to the building in order to arrest him. This claim was made clear early in the trial. Therefore, the name of the informer, his role and actions qua informer, were relevant and material to defendant's theory of defense. At the State's request, defendant had disclosed his intention to call Holt as his witness. Undoubtedly, this was to explain how he happened to be in the building where he was arrested. When the State learned Holt was going to testify for the defense, the assistant State's attorneys had in their possession a statement with which they could impeach Holt if he, as he did, testified and corroborated Chaney. Knowledge of the statement, and the fact that he was an informer, would have been helpful to the defense because it would have furnished essential information and prevented the calling of Holt, the State's informer, as one of defendant's witnesses. Therefore, Holt was not an ordinary informer, one who only had furnished information which established probable cause for a search or an arrest. He was an informer whose communications to the police were relevant and helpful to the defense which had been interposed; his disclosure as the informer was essential if defendant was to be afforded a fair and impartial trial.

■■ The privilege by which the State withheld Holt's name, that of one who had furnished the police with information concerning a crime, is designed to encourage citizens to act in aiding law enforcement by preserving their anonymity. (*People v. Durr*, 28 Ill.2d 308, 192 N.E.2d 379.) This privilege, however, is not absolute. "[L]imitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identify, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." (*Roviaro v. United States* (1957), 353 U.S. 53, 60-61, 1 L.Ed.2d 639, 77 S.Ct. 623; compare *People v. Mack*, 12 Ill.2d 151, 145 N.E.2d 609.) What is essential to the fair determination of a cause depends on the charge made against the defendant and the nature of the defense he asserts. (*Rugendorf v. United States* (1964), 376 U.S. 528, 11 L.Ed.2d 887, 84 S.Ct. 825; *People v. Nettles*, 34 Ill.2d 52, 213 N.E.2d 536.) And in all cases, withholding of the identity of an informer must be by methods which are consistent with the requirements of due process of law. *People v. Williams*, 40 Ill.2d 367, 240 N.E.2d 580.

In the case before us, Chaney did not know Holt was the State's informer, although he knew his name. This fact did not render harmless

the effects of the State's refusal to disclose, when requested, that Holt was its informer. (See *United States v. Conforti* (7th Cir. 1952), 200 F.2d 365; *Portomene v. United States* (5th Cir. 1955), 221 F.2d 582.) To aid in his defense, Chaney, through counsel, sought this vital information. The State, while holding a statement with which it could destroy Holt as a defense witness, invoked the informer's privilege and prevented Chaney from learning the identity of its informer, a fact that was crucial to his defense.

■■ In *People v. Telio*, 1 Ill.App.3d 526, 275 N.E.2d 222, we said that "[t]he trial of a criminal case is not a poker game with each side holding its best cards close to the vest. It is, as are all trials, a search for the truth." (1 Ill.App.3d 526, 530.) These words have an apt meaning in this case. In the context of the peculiar facts shown in this record, invoking by the State of the informer privilege impeded this search for the truth and deprived defendant of a fair trial. Therefore, the trial court's sustaining of the State's objections to defendant's questions which would have disclosed to him, in apt time, the identity of Holt as the State's informer, was prejudicial error. Defendant's motion for mistrial should have been granted. For these reasons, we reverse the judgment and remand the cause for a new trial, or for further proceedings not inconsistent with the views expressed in this opinion.

Reversed and remanded.

DOWNING, P. J., and STAMOS, J., concur.