People of the State of Illinois, Plaintiff-Appellee, v. Joseph Mason (Impleaded), Defendant-Appellant.

Gen. No. 51,236.

First District, First Division.
January 15, 1968.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Frederick F. Cohn and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County (Elmer C. Kissane and Richard A. Rinella, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

In a bench trial, Joseph Mason, Huery Davis and David Parker were found guilty of the theft of an automobile. Mason was sentenced to one to three years in the penitentiary. In a separate appeal, defendant Mason contends that he was denied effective assistance of counsel because the same Assistant Public Defender represented the three defendants when they had antagonistic theories of defense.

On August 24, 1965, the Chicago police curbed an automobile in which the three defendants were riding. Defendant Mason was driving. The three were arrested after the police ascertained that Mason had no driver's license and that the ignition had been tampered with. Later, the police determined that the car was stolen, and that it belonged to Lucius Shaw. At the trial, two police officers testified for the State and related the details of the arrest and the interrogation of each defendant.

For the defense, each of the three defendants testified in his own behalf. Davis testified first. He stated that he was inivited by Mason to take a ride in the car with Parker and Mason. He had not seen the car before, and Mason told him it belonged to a friend. Mason and Davis waited across the street in a liquor store for Parker to leave the laundromat where he worked and to join them. The three then drove away and were arrested shortly thereafter. The trial judge examined Davis, and he stated

119

that he did not know who owned the car, and he knew that the car did not belong to either of the other two.

Parker testified next. He had known Mason and Davis for several months. He worked in a laundromat, and at about 1:00 a. m., Mason and Davis were parked in a car in front of the laundromat. He joined them when he "locked up the business," and they went to get a drink. He had never seen the car before and told the police he did not know it was stolen.

Defendant Mason testified last. He stated that he and Davis had been drinking with Parker at the laundromat, and they were waiting for him to close. While there, "James Brown" joined them. Brown had a car, and "we all four gets in the car." Brown drove them to a tavern, where Brown got out and entered. They were double-parked, with the motor running, and Brown, while standing in the tavern doorway, told them to park the car and to go in and drink. Mason "happened" to be the one who got under the wheel and, while driving, Davis told him the police were following, and Mason pulled over and parked. He did not know the car was stolen.

On cross-examination, defendant Mason said the police asked him questions about the possession of the car, and he told the police that "we had got the car from a girl friend of Parker's. That was not the truth. I was lying to them then. The three of us kept switching stories back and forth. Davis said we got the car from Parker's girl friend, too. That was a lie too. Parker said no. I can't recall what he said at the time. But everybody went against each other, sort of, whatever one said, the other one stated something else. . . . I told the police officers about Brown."

Mason was examined by the trial judge regarding Brown and stated, "I gave my lawyer his address. I gave him the place he was working and living. Brown is single to my knowledge. The last time I saw him was when I

was out on bond. He was at the laundromat. I asked him about this car and he said that he wasn't going to take the blame for it."

In rebuttal, one of the arresting police officers, James Tobin, testified that he had never heard the name Brown during the investigation nor at the time of the arrest of the three defendants.

Before finding defendants guilty of "theft," the trial judge carefully reviewed the evidence. As to the testimony of Mason regarding Brown, the court remarked, "I don't believe that story, I don't believe that at all."

Defendant Mason contends that the failure of the trial court to appoint separate counsel for Mason when the conflict in the defendants' testimony was revealed requires reversal. Defendant asserts: "In the instant case, as the trial progressed, it became apparent that the interests of the three defendants were in conflict and that no lawyer could represent Davis and Parker and give complete loyalty to defendant Mason. When such conflict manifested itself, the court had a duty to suspend proceedings and appoint separate counsel. (Craig v. U. S., 217 F2d 355; People v. Robinson, 269 P2d 6; Lollar v. U. S., 376 F2d 243 (DC Cir 3/20/67) No. 20300.) The court must appoint separate counsel even though defendant did not specifically request separate and distinct counsel. (Lollar v. U. S., supra.) An indigent defendant with little education, cannot be expected to comprehend the existence of conflict or the need for separate counsel. People v. Harris, 155 F Supp 17. Nor is a reviewing court permitted to speculate that a conviction would have occurred even if the defendant was given effective assistance of counsel. 'The right to have assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial.' Glasser v. U. S., 315 US 60; Craig v. U. S., 217 F 355; People v. Robinson, 269 P2d 6; Lollar v. U. S., supra; Anderson v. U. S., 352 F2d 945."

121

In Craig v. United States, 217 F2d 355, it is said (p 359):

> "We think it follows from the foregoing findings that although Craig was in no way 'deprived' of his right to independent counsel of his own choosing by any act of the District Judge or District Attorney, nevertheless, by reason of a combination of circumstances, not reasonably foreseeable by Court or counsel, he did not receive the effective assistance of counsel to which he was entitled under the Sixth Amendment, and that under the particular circumstances of this case he did not intelligently and voluntarily waive such right."

Defendant relies heavily on Lollar v. United States, 376 F2d 243. There Lollar argued on appeal that requiring him to share an attorney with his codefendant deprived him of his constitutional right of effective assistance of counsel. The court agreed and said (p 246):

> "It remains to be considered whether appellant was prejudiced by joint representation. It is settled that some prejudice, some conflict of interest, resulting from the joint representation must exist before one can be said to have been denied effective assistance of counsel. . . .

> "We take as our guideline that Supreme Court's admonition in Glasser that '[t]he right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial.' 315 US at 76. . . . [W]hen there are indications in the record that stir doubts about the effectiveness of joint representation, those doubts should be resolved in favor of the defendant, particularly where, as here, the record fails to indicate whether in assigning counsel the danger of prejudice from joint representation was considered.

122

"We hold, therefore, that only where 'we can find no basis in the record for an informed speculation that appellant's rights were prejudicially affected,' can the conviction stand. . . . In effect, we adopt the standard of 'reasonable doubt,' a standard the Supreme Court recently said must govern whenever the prosecution contends the denial of a constitutional right is merely harmless error. . . . Such a standard is clearly appropriate in the present context as well, where to find prejudice is to decide that the defendant has been denied effective assistance of counsel. When measured against this standard, the record in the present case fails to convince beyond a reasonable doubt that appellant was not prejudiced because of the joint representation."

The State argues "the existence of Brown would have exculpated both Parker and Davis. Yet, neither of these two defendants testified that Brown was present. If Brown had really existed, the Public Defender would have been more than happy to bring out his presence on his direct examination of both Parker and Davis because this would have relieved all three defendants of guilt. The Public Defender never cross-examined Davis and Parker about the existence of Brown because there obviously never was any such person. . . . The judge, as trier of law and fact in the instant appeal, found all three defendants guilty. The judge did not believe any of the defendants' testimony. If codefendants, Davis and Parker, had been found not guilty and the appellant found guilty, then real prejudice would have been manifested."

The State also notes that no request for severance was ever made and no conflict of interest was ever suggested by the Public Defender.

In examining the evidence here in the light of the pronouncements of Lollar v. United States, we find no basis in the record for an informed speculation that Mason's rights were prejudicially affected, nor do we find any

123

prejudice upon which "to decide that defendant had been denied effective assistance of counsel." The trial judge, in his lengthy examination of defendant Mason about Brown, elicited any further information that might have assisted the court in determining the credibility of Mason or the existence of Brown. For the court on its own initiative to have suspended this trial after the testimony of defendant Mason, in order to appoint separate counsel for Mason and to give the newly appointed counsel sufficient time for preparation, would have been a useless and empty gesture.

We conclude that this record fails to show that defendant Mason was prejudiced because of the joint representation by the Public Defender of the three defendants. For the reasons given, the judgment of the Circuit Court is affirmed.

Affirmed.

BURMAN, P. J. and ADESKO, J., concur.