**People of the State of Illinois, Plaintiff-Appellee, v. Thomas Bass (Impleaded), Defendant-Appellant.**

**Gen. No. 51,116.**

First District, Third Division.

September 19, 1968.

Allen H. Gerstein and Owen J. Murray, of Chicago, for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Allen Gersh, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

This is an appeal from a conviction of robbery for which the defendant was found guilty after a jury trial and was sentenced to the penitentiary for fifteen to forty-five years.

The defendant, Thomas Bass, was tried jointly with one Cleon Robbins, and both were represented by the same appointed counsel. Both defendants were found guilty, and the appeal of Robbins was prosecuted separately and was decided by this court in People v. Robbins, 88 Ill App2d 447, 232 NE2d 302.

The defendant contends on appeal that he was denied effective assistance of counsel because counsel was confronted with a conflict of interests which was detrimental to him, and that this conflict was so apparent as to impose a duty upon the trial court to either require new counsel or a separate trial. The defendant further contends that he was denied due process of law by being subject to a pretrial confrontation of witnesses without the use of a lineup procedure and without the assistance of counsel.

On December 12, 1964, two men entered the Chateau Du Roi Hotel. The hotel house detective, Andrew King, was disarmed by one of the men, but when the other man discovered that the cashier, Estelle Williams, was calling the police, both men fled from the premises. Shortly thereafter, two police officers, having received a radio call concerning an armed robbery in the area, saw two men proceeding rapidly down the street and ordered them to stop. These two men were the codefendants, Bass and Robbins. Robbins stopped while Bass ran, whereupon Bass was shot in the hip by another police officer who had responded to the radio call. Bass was taken to the hospital for treatment of his wound and was subsequently brought to the police station, at which time he was interrogated and was viewed by Andrew King and Estelle Williams. Both witnesses positively identified the defendant as one of the men who had participated in the robbery which had occurred only a few hours earlier. The identification was made without the use of a lineup and without the presence of counsel representing the defendant.

The Public Defender was appointed to represent both defendants but subsequently withdrew from the case. Finally, counsel was appointed to represent both defendants at trial. The defendant at no time prior to the instant appeal made any objection to being jointly represented and jointly tried.

Both the defendant and Robbins pleaded not guilty to the charge of robbery. Robbins denied any participation in the crime, but near the close of the trial, the defendant, Bass, testified on direct examination that he did participate in the robbery and that Robbins was not involved in the crime but that a man named Eddie (whose last name and whereabouts were unknown to Bass) was his accomplice. Despite this testimony the jury, apparently relying on the positive identifications made by the state's witnesses, found both defendants guilty.

██ The defendant now contends that his appointed counsel was enmeshed in a conflict of interests due to the denials of Robbins and the admissions by Bass, and that as a result of this conflict, counsel "martyred" Bass in an attempt to gain an acquittal for Robbins. In view of this alleged conflict, the defendant argues that the trial judge was under a duty, on its own motion, to require either new counsel or separate trials. This court fails to perceive any conflict between the interests of the codefendants. A finding of adverse interests cannot be based solely on mere assertions and unless the defendant can establish that such a conflict in fact existed at trial, this court will not indulge in speculation or conjecture to determine whether separate counsel was required. People v. McCasle, 35 Ill2d 552, 221 NE2d 227. In the instant case, it has not been demonstrated that the interests of the codefendants were conflicting or antagonistic. Neither Robbins nor Bass was attempting to establish his defense by implicating the other—a classic example of conflicting and antagonistic interests which would justify a severance. Admittedly, the incriminating testimony of the defendant Bass is unusual in a case where codefendants have pleaded not guilty, but this rarity does not affect our conclusion that there was no conflict between the codefendants.

In People v. McCasle, 35 Ill2d 552, 556, 221 NE2d 227, two defendants were tried jointly and convicted of armed robbery. One of the defendant's contentions on appeal was that the court on its own motion should have appointed separate counsel so as to adequately defend the interests of each defendant. Both defendants had denied knowing the other and each had separate alibis. In rejecting the defendant's argument, the court stated:

> "There was no inconsistency in these defenses, and it was not improper for the same public defender to contemporaneously represent both defendants. As a general rule, jointly indicted defendants should be jointly tried unless their defenses are antagonistic, and a severance is neither required nor authorized where their defenses are not inconsistent. (Citing cases.) Additionally, there is no showing that defendant was prejudiced by counsel's representation of both him and his codefendant, or that a different result might have obtained had separate counsel been appointed, and we ought not disturb a judgment on the basis of conjectural or speculative conflicts between the interests of codefendants which are envisioned for the first time on appeal.

It is worthy of note that in the case at bar, as in the McCasle case, the defendant made no objection to such joint representation either before or during trial. It is this significant absence of objection which renders Glasser v. United States, 315 US 60, 86 L Ed 680, inapposite to the case at bar. In Glasser, the defendant, an attorney himself, made specific objection when the trial judge appointed the defendant's attorney, whom the defendant had personally selected, to represent a codefendant. Furthermore, counsel for Glasser expressed reluctance to represent both defendants due to several direct conflicts between the defenses of each defendant.

The defendant argues that counsel failed to vigorously cross-examine several of the state's witnesses and refused to present certain motions requested by the defendant, and that these omissions clearly indicated an apparent conflict which dictated a severance on the part of the trial judge. We cannot agree. Counsel informed the court that the requested motions would, in his judgment, serve no legitimate purpose and would only have a dilatory effect on the proceedings. There is no indication in the record that such a judgment was unfounded. The record is replete with evidence of defense counsel's attempts to protect the interests of both defendants during the course of the trial. At the inception of the trial, counsel made the following statement to the court:

> "There is one other thing I wish to apprise the Court, and I just wish to reiterate for Mr. Robbins, Mr. Robbins' defense will be that, and as he contended all along, he was not a participant in this particular situation and, however, he has and is willing to stand trial in this cause together with Mr. Bass *and it is our belief that both Mr. Bass and Mr. Robbins wish to testify and insist on telling their story to the Court and jury.*
>
> *"Is that correct?*
>
> *"Mr. Bass: Right."* (Emphasis supplied.)

Counsel also stated:

> "I advised both Mr. Bass and Mr. Robbins on the consequences of testimony from either one of them, possibly injuring the other in so far as their opinion, and they are fully advised."

Prior to the defendant's damaging admissions on direct examination, his counsel conducted the following preliminary interrogation of the defendant:

"Q. Mr. Bass, you have requested that you testify, is that correct?

"A. That's right.

"Q. And you are willing to testify, and knowing that you have no obligation to take the stand and appear as a witness in this particular case?

"A. That is correct.

"Q. And it is upon your insistence that you have been advised by us as not having any obligation to testify, that you persist in testifying, is that correct, sir?

"A. That's right."

This court will not inquire into the motives for the defendant's incriminating admissions on the witness stand or his apparent insistence on retaining a plea of not guilty. However, the record reveals that the defendant, having been fully apprised of his rights, felt compelled to admit his participation in the robbery and to exculpate Robbins. In view of this insistence to testify, the defendant's counsel could do very little. To require counsel to vigorously cross-examine witnesses in an attempt to discredit testimony which he knew would later be admitted to by his own client is to require the performance of a foolhardy and possibly damaging trial tactic.

██ The defendant makes the additional contention that such conduct on the part of his appointed counsel was so defective that he was denied his right to competent representation as guaranteed by the United States and Illinois Constitutions. Again it must be emphasized that in light of the rather unusual position in which defense counsel was placed, there is nothing to indicate that he did not act in a rational manner and had the defendant's best interests in mind during the trial. The criteria to be used in evaluating counsel's competency were set forth in United States ex rel. Weber v. Ragen, 176 F2d 579, at page 586:

■■■■■■

"As to the requirement under the Fourteenth Amendment, the services of counsel meet the requirements of the due process clause when he is a member in good standing at the bar, gives his client his complete loyalty, serves him in good faith to the best of his ability, and his service is of such character as to preserve the essential integrity of the proceedings as a trial in a court of justice. He is not required to be infallible. . . . His client is entitled to a fair trial, not a perfect one."

In People v. Ashley, 34 Ill2d 402, 411, 216 NE2d 126, the court said:

". . . it is well settled that in order to establish incompetency of counsel, actual incompetent representation and substantial prejudice to the defendant as a result thereof must be established. (Citing cases.) Nor can charges of incompetency be based solely upon assertions."

It is impossible to understand how the conduct of the defendant's counsel in the case at bar could have substantially prejudiced the interests of a defendant who was determined to confess his guilt at trial. There is no reason to assume that the defendant would have acted any differently had he been represented by different counsel or had he been tried separately.

■■ ■■ The defendant further alleges that he was denied the protection of the due process clause in that he was identified by the two witnesses without the use of a lineup and without the assistance of counsel at this stage. It has been well established in Illinois that the fact that an accused is not placed among a group when presented to the witness for identification does not fatally weaken such evidence but only relates to the weight and credibility to be given to such evidence. People v. Lamphear, 6 Ill2d 346, 128 NE2d 892; People v. Gardner, 35 Ill2d 564, 221 NE2d 232. The issue of the credibility of the identi-

266

fiction by the state's witnesses was within the province of the jury and it will not be disturbed by this court on appeal.

The United States Supreme Court decisions of United States v. Wade, 388 US 218, 18 L Ed2d 1149, and Gilbert v. California, 388 US 263, 18 L Ed2d 1178, have held that during a lineup or other identification procedure, a defendant is entitled to be represented by counsel. However, in a companion case, the United States Supreme Court made it clear that such a requirement was to have prospective application only. Stovall v. Denno, 388 US 293 (June 12, 1967). The court's rationale for prospective application read in pertinent part:

> "The law enforcement officials of the Federal Government and of all 50 States have heretofore proceeded on the premise that the Constitution did not require the presence of counsel at pretrial confrontations for identification. . . . The overwhelming majority of courts have treated the evidence question not as one of admissibility but as one of credibility for the jury. . . . It is, therefore, very clear that retroactive application of Wade and Gilbert 'would seriously disrupt the administration of our criminal laws.' "

Since the defendant was convicted prior to the Stovall decision, the Wade and Gilbert holdings are not applicable. We have found no Illinois authority prior to Stovall to indicate that the pretrial confrontation for identification should be deemed a "critical stage" of the criminal process thereby requiring the presence of counsel. However, the court in Stovall recognized that, independent of any right to counsel claim, an accused can be deprived of due process of law if the manner of confrontation ". . . was so unnecessarily suggestive and conducive to irreparable mistaken identification. . . ." Such a determination must be made from viewing the totality of the

circumstances surrounding the confrontation. In the case at bar, we do not believe that the totality of circumstances was so wanting in fairness as to deprive the defendant of due process of law.

For the foregoing reasons the judgment is affirmed.

Affirmed.

DEMPSEY, P. J. and SCHWARTZ, J., concur.