THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GREGORY HUSAR, Defendant-Appellant.

(No. 58421;

First District (2nd Division)—September 10, 1974.

Ronald Goldberg, of DePaul Law Clinic, of Chicago (Lee Boyd, Hank Browne, and Ruth Schmitt, Senior Law Students, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis and Thomas A. Mauet, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

Gregory Husar was convicted of possession of marijuana, an offense defined and punished by the Cannabis Control Act (Ill. Rev. Stat. 1971, ch. 56½, pars. 701 *et seq.*).[1] He was sentenced to two years probation with the requirement that he serve the first ten days in the Chicago House of Correction. The following are the facts.

On December 16, 1971, at about 9 P.M., an informer told three Chicago police officers that at the intersection of Armitage and Fremont, for the sum of $5, he purchased a plastic bag of crushed green plant from "Fred" who, the informer said, was driving a yellow Camaro convertible with Illinois license number 7212. A few moments later, the officers went to that intersection and they saw a yellow Camaro convertible with Illinois license number 7212 making a righthand turn. The owner and driver was Lawrence Barba. The front seat passenger was Gregory Husar. Acting on the information given by the informer, the officers stopped the car. When one of them looked into it, he saw a clear plastic bag resting on a console between the driver and the front seat passenger. On the floor, in front of the passenger, was a brown bag. Subsequent laboratory tests showed the two bags contained 230 grams of marijuana.

---

[1] Cannabis includes marijuana. (Ill. Rev. Stat. 1971, ch. 56½, par. 703.) In its penalty paragraph, the Cannabis Control Act provides that "[i]t is unlawful for any person knowingly to possess Cannabis. Any person who violates this section with respect to:

\* \* \*

(d) more than 30 grams but not more than 500 grams of any substance containing cannabis is guilty of an offense and shall be imprisoned in the penitentiary from 1 to 3 years; provided that if any offense under this subsection (d) is a subsequent offense, the offender shall be imprisoned in the penitentiary from 2 to 6 years \* \* \*." Ill. Rev. Stat. 1971, ch. 56½, par. 704.

Husar and Barba were arrested; a short time later, they were charged possession of cannabis sativa, commonly known as marijuana.

On the day their case came to trial, the court appointed the public defender of Cook County to represent them. The assistant public defender who undertook the assignment was given the files of the case, given an opportunity to talk with the defendants and told that he could have as much time for trial preparation as he thought necessary. Then, speaking directly to the two defendants, the trial judge told them that if they desired, they could have a continuance to obtain private counsel. No request was made either for additional time or for a continuance. Instead, the assistant public defender, after conferring with the defendants, announced he was ready, that jury would be waived and that he was prepared to begin with a motion to suppress evidence. Defendants were admonished concerning their right to trial by jury, and the cause proceeded.

In support of the motion, the assistant public defender called two witnesses: one of the arresting officers and Barba. After the two had testified, and the lawyer had urged a ruling in defendants' favor, the trial judge denied the motion. Thereupon, the parties stipulated that the evidence which had been heard could be considered as part of the State's case in chief. To supplement the stipulation, the State called as its witness the same arresting officer, who then testified concerning the two bags and the chemical tests which determined their contents were marijuana. With that, the State rested its case and defendants moved for a directed finding of not guilty. The court denied the motion.

After this ruling, Husar testified in his own behalf. He admitted he was the front-seat passenger in the yellow Camaro; and at the end of his testimony, he admitted that the two bags of marijuana found in the car belonged to him. When he was cross-examined, Husar again admitted that the marijuana was his, and then insisted that Barba did not know the bags were in the Camaro. Barba then testified and denied that on the occasion in question he knew the two bags of marijuana were in his automobile. After hearing the evidence and counsel in summation, the trial judge acquitted Barba and found Husar guilty.

In this appeal, and in accordance with Supreme Court Rule 711,[2] his

---

[2] "A student in a law school approved by the Board of Law Examiners pursuant to Rule 703 may be certified by the dean of the school to be eligible to perform the services described in paragraph (c) of this rule * * *.

* * *

He may prepare briefs, excerpts from record, abstracts, and other documents filed in courts of review of the State, which may set forth the name of the student with the accompanying designation 'Senior Law Student' but must be filed in the name of the supervising member of the bar." Ill. Rev. Stat. 1971, ch. 110A, pars. 711(a), 711(c)(3).

brief has been prepared by three senior DePaul University law students, Lee Boyd, Hank Browne and Ruth Schmitt, who volunteered their services and whose work has been supervised by Ronald D. Goldberg, a member of the bar of this court and assistant professor in the College of Law, DePaul University. On Husar's behalf, and from these facts, they present seven issues for our review. 1. Whether Husar had the right to appointment of separate counsel to represent him. 2. Whether the dispatch with which the assigned assistant public defender proceeded with the defense deprived Husar of his right to effective assistance of counsel. 3. Whether Husar's court-appointed counsel was incompetent. 4. Whether this court will consider extrinsic evidence which would show that Husar was denied effective assistance of counsel. 5. Whether Husar waived his claim that the trial court erred when it denied the motion for directed finding at the close of the State's case. 6. Whether Husar was proven guilty beyond a reasonable doubt. 7. Whether probation subject to the requirement that Husar be imprisoned for 10 days is now, for this case, a legally permissible sentence.

## I.

■■ The right to counsel that is guaranteed by the Sixth Amendment to the Constitution of the United States does not include an automatic right to separate counsel in a case involving more than one defendant. (*People v. Chacon* (1968), 69 Cal. 2d 765, 773, 774, 447 P.2nd 106, 73 Cal. Rptr. 10, 15.) One counsel in a case against multiple defendants can represent more than one, as long as the representation is effective and it does not appear that conflicts of interest between or among defendants can be anticipated. (*Powell v. Alabama* (1932), 287 U.S. 45, 71, 77 L. Ed. 158, 53 S. Ct. 55; *People v. Robinson*, 42 Ill.2d 371, 247 N.E.2d 898; see *People v. Williams*, 36 Ill.2d 194, 222 N.E.2d 321.) However, a criminal conviction will not be reversed because of conjectural or speculative conflicts of interest which are envisioned for the first time on appeal. (*People v. McCasle*, 35 Ill.2d 552, 556, 221 N.E.2d 227.) The record must show that at the time counsel was appointed, there existed a possibility of prejudice from joint representation. Compare *People v. Chacon* (1968), 69 Cal.2d 765, 73 Cal. Rptr. 10.

■■ In this case, the claim of conflict of interest is based only on the fact that Husar testified and admitted that the marijuana involved belonged to him. It is argued for the first time in this appeal that Husar's testimony showed an interest different from that of Barba. We do not agree. The fact that a jointly represented defendant confesses his guilt in court does not prove a conflict of interest. In. *People v. Bass*, 101 Ill. App.2d 259, 243 N.E.2d 305, two defendants were charged with robbery.

Near the end of their trial, one of them testified and on direct examination admitted that he committed the robbery and insisted that his co-defendant was not involved in the crime. We held that this did not show a conflict between defendants, one that precluded their being represented by the same court-appointed counsel. Therefore, we conclude that Husar did not have the right to have separate counsel appointed to represent him. Compare *People v. Mason*, 91 Ill.App.2d 118, 234 N.E. 2d 351; see Annot., 34 A.L.R. 3d 470, 484 (1970).

## II.

When the assistant public defender learned of the appointment to represent Husar and Barba, he conferred with the two defendants. The record does not disclose the length of time devoted to the conference. It does disclose, however, that the charge was a felony. The two defendants were arrested on December 15, 1971, and the complaint against them was filed the following day. Then, after a hearing and setting of bond, the case was continued to February 15, 1972, the day of the appointment. Therefore, Husar and his co-defendant had been given 60 days to seek counsel and prepare for trial.

At the end of his conference with defendants, the assistant public defender announced that he was ready. After waiver of jury was recorded, the assistant state's attorney asked leave to reduce the charge from a felony to a misdemeanor, the only class of cases assignable to that court. Therefore, as a consequence of the decision to go to trial immediately, Husar received the benefit of reduction to a misdemeanor of a charge for which he could have been sentenced to a penitentiary term of not less than one nor more than 3 years. (See Ill. Rev. Stat. 1971, ch. 56½, par. 704(d).) Moreover, this is not a case in which the record discloses that the assistant public defender never talked to the defendant. (See *People v. Birdette*, 22 Ill.2d 577, 177 N.E.2d 170.) It is not a case in which a defendant claims, without denial by the State, that his court-appointed counsel never conferred with him prior to trial. (See *People v. Garrison*, 43 Ill.2d 121, 251 N.E.2d 200.) Nor is it a case in which the trial judge restricted the assistant public defender to 5 minutes within which to talk to the defendant, would not permit conversation between them in a private room and insisted on immediate trial over the objection of court-appointed counsel. See *People v. Shiffman*, 350 Ill. 243, 182 N.E. 760.

■■ Instead, this is a case in which an assistant public defender was appointed for two defendants, was given the file of the case, was given the opportunity to confer with defendants with the understanding that he could have all the time he needed, was told that he could obtain a

continuance if he wanted one and defendants were told they could have a continuance to obtain private counsel. After a period of consultation that appeared to satisfy defendants, the assistant public defender announced he was ready and proceeded with the defense with a dispatch which not only was free of any discernible injury to Husar but in fact accrued to his benefit. Denial of effective assistance of counsel must result in substantial prejudice. (*People v. Palmer*, 31 Ill.2d 58, 65, 198 N.E.2d 839; *People v. Goerger*, 52 Ill.2d 403, 288 N.E.2d 416; *People v. Thomas*, 51 Ill.2d 39, 280 N.E.2d 433.) In this case, Husar was not prejudiced by the fact that the assistant public defender upon being appointed, and soon after a consultation, immediately announced he was ready for trial. (See *People v. Kendall*, 7 Ill.2d 570, 131 N.E.2d 519; *People v. Coleman*, 45 Ill.2d 466, 259 N.E.2d 269.) Therefore, we conclude that the dispatch with which the assistant public defender proceeded with the defense of the case did not deprive Husar of his right to effective assistance of counsel.

## III.

As a result of the immediate trial, the assistant public defender did not move for discovery, he did not request a list of witnesses, he did not ask the State to produce police reports, he did not move for information concerning identity of the informer who had told the police about the yellow Camaro; and, of course, he did not ask for a continuance. On Husar's behalf in this appeal, it is argued with great seriousness that these failures of the assistant public defender prove that he was incompetent and that his conduct deprived Husar of effective assistance of counsel for his defense.

■■ Husar, of course, had the right to effective assistance of counsel in his trial. (*Gideon v. Wainwright* (1963), 372 U.S. 335, 9 L.Ed.2d 799, 83 S.Ct. 792; *Argersinger v. Hamlin* (1972), 407 U.S. 25, 32 L.Ed.2d 530, 92 S.Ct. 2006.) Denial of that right would require that his conviction in this case be set aside. (*People v. Morris*, 3 Ill.2d 437, 445, 121 N.E.2d 810.) However, a determination that he was denied effective assistance of counsel can be made only if his court-appointed counsel was incompetent, and as a result, Husar was substantially prejudiced. *People v. Harper*, 43 Ill.2d 368, 374, 253 N.E.2d 451.

In making this determination, we bear in mind that review of appointed counsel's competence does not extend to those areas involving exercise of judgment, discrtion or trial tactics. This is true even though appellate counsel or members of his court, were they counsel in the case, might have acted in a different manner in the same situation. (*People v. Martin*, 44 Ill.2d 489, 256 N.E.2d 337.) As every experienced trial lawyer

knows, the motions which appellate counsel now contend the assistant public defender should have made were matters of trial judgment, left to the decision of counsel in the case. With one exception, the motion for list of witnesses, the motions which were not made would not have requested relief to which Husar was entitled as a matter of right. Except where the relief is a matter of right, a motion is addressed to the sound discretion of the trial court which, in the exercise of that discretion, may either grant or deny it. (60 C.J.S. *Motions and Orders* § 39 (1969).) Knowing this, assistant public defender, after conferring with defendants and learning the facts of the case, exercised his judgment and decided to forego the others and proceed with a motion to suppress evidence. Every lawyer familiar with criminal procedure knows that a motion to suppress functions as a discovery device. (See Gramenos, Tactical Judgments in the Trial of Criminal Cases, 55 Ill. B. J. 1000, 1001 (1967). Therefore, from his conference with defendants and from what he learned during the hearing of the motion, the assistant public defender had all the information about the case he needed to proceed with its defense on the merits.

■■ It is argued, however, that failure of the assistant public defender to move for appointment of separate counsel for the two defendants proves he was incompetent. This argument is without substance. Appointment of separate counsel is justified only where the record shows actual or potential conflict of interest among defendants. (*People v. Chacon* (1968), 69 Cal. 2d 765, 447 P.2d 106, 73 Cal. Rptr. 10; *People v. Baker*, (1968), 268 Cal.App.2d 254, 73 Cal. Rptr. 758.) As we have already pointed out, there was no conflict of interest between Husar and Barba. It is not a conflict of interest between two defendants for one to say that he committed the crime, and the other, who is absolved by his codefendant, to insist that he is innocent. (*People v. Bass*, 101 Ill. App.2d 259, 243 N.E.2d 305.) Therefore, we conclude that, on the facts shown in this record, Husar's court-appointed counsel was not incompetent.

## IV.

The record of this appeal does not disclose how long the assistant public defender consulted with Husar and Barba or what advice he gave them. For this reason, appellate counsel have appended to Husar's brief three affidavits. One is signed by the assistant public defender and states the length of time he took consulting with the two defendants. The other two are signed by Husar and Barba; and in these, they tell of their conference with the assistant public defender and the inadequacy of the advice he gave them. We are told that this court should consider

these affidavits because Husar was convicted of a misdemeanor and at the time of his conviction Illinois law did not provide a post-conviction method by which he could raise the claim that in his conviction he was deprived of his constitutional right to counsel.

It happens, however, that after Husar's conviction, the Supreme Court in *People v. Warr*, 54 Ill.2d 487, 298 N.E.2d 164, overruled a prior decision and in the exercise of its supervisory jurisdiction, held that a convicted misdemeanor defendant who asserts that his conviction resulted from a substantial denial of his constitutional rights may institute a proceeding under the Post-Conviction Hearing Act. (54 Ill.2d 487, 493.) Therefore, the fact alone that he was convicted of a misdemeanor is no longer a bar to Husar's application for post-conviction relief.

■■ Even were this not so, we could not consider these affidavits. The report of proceedings of the trial together with the clerk's mandatory record constitute the complete record on appeal, not supplementable by affidavits. (*People v. Rewland*, 335 Ill. 432, 167 N.E. 10; compare *People v. Palmer*, 3 Ill.App.3d 608, 278 N.E.2d 165.) This rule is a rigid one. It was applied by the Supreme Court of the United States in *Ciucci v. State of Illinois* (1958), 356 U.S. 571, 2 L.Ed.2d 983, 78 S. Ct. 839, although a death sentence was inflicted and serious constitutional questions were involved. Therefore, this court will not consider extrinsic evidence which would show that Husar was denied effective assistance of counsel. *People v. Griffin*, 397 Ill. 456, 74 N.E.2d 691.

## V.

Nor will we consider Husar's claim that the trial court committed error when it denied his motion for directed finding at the close of the State's case. It is the rule that error in ruling on a motion for direct finding of not guilty is waived if the defendant introduces evidence after the motion is denied. (*People v. Washington*, 23 Ill.2d 546, 179 N.E.2d 635; *People v. Slaughter*, 29 Ill.2d 384, 194 N.E.2d 193.) In this case, after his motion was denied, Husar testified and Barba was called as a witness for the defense. This was a waiver of whatever error the trial court committed in ruling on the motion. *People v. Gokey*, 53 Ill.2d 433, 312 N.E.2d 637; *People ex rel. Kubala v. Woods*, 52 Ill.2d 48, 284 N.E. 2d 286; *People v. Harvey*, 9 Ill.App.3d 944, 293 N.E.2d 406.

## VI.

After this ruling, Husar testified in his own behalf. At that time he was a 23-year old college graduate who had attended two Illinois universities. He was a production manager and salesman for a picture-frame company. From his testimony, it appears he was competent to testify;

he was an intelligent person who was adjusted to his surroundings and aware of the seriousness of the proceedings in which his rights were involved. His testimony and Barba's show they were roommates; and that on the evening in question Husar asked Barba to take him to an address in Oak Park, Illinois, where, Barba thought, Husar was going to visit his girl friend.

■■ After understanding and answering questions asked him by the assistant public defender, Husar, in his testimony, admitted that the marijuana found by the police in Barba's automobile on December 16, 1971, was his. He then went further and insisted that, on the occasion in question, Barba did not know marijuana was in his car. In view of his competency and the fact that Husar was charged with possession of marijuana, this testimony was a voluntary judicial confession. (*People v. Telio*, 1 Ill.App.3d 526, 275 N.E.2d 222.) A voluntary judicial confession by a competent person is of convincing character and is the highest kind of evidence known to the law. (*People v. Green*, 17 Ill. 2d 35, 41, 160 N.E.2d 814.) True, it was defense evidence; but the trial court, as trier of the facts, could consider the State's evidence and that presented by Husar in determining the issue of his guilt. (*Baker v. State* (Tex. Cr. App. 1974), 504 S.W.2d 872, 874.) Evidence introduced by a defendant may be considered by the trier of the facts; and, in some important way, it may supply deficiencies in the State's proof. (See *People v. Clark*, 9 Ill.2d 400, 406, 137 N.E.2d 820.) In fact, by admitting under oath an essential element of the offense charged, a defendant can conclusively inculpate himself. (See *People v. Durley*, 53 Ill.2d 156, 290 N.E.2d 244.) Therefore, in this case, the testimony of the State's witnesses, the stipulations of the parties and Husar's voluntary judicial confessions proved him guilty beyond a reasonable doubt.

## VII.

After finding Husar guilty, the trial court conducted a hearing in aggravation and mitigation which disclosed that he did not have a criminal record and was gainfully employed. The court, after considering defense and prosecution recommendations, sentenced Husar to 2 years' probation, subject to a 10-day period of imprisonment. When this sentence was imposed, imprisonment as a condition of probation was permissible. See Ill. Rev. Stat. 1971, ch. 38, par. 117—2.

However, on January 1, 1973, while this appeal was pending, the Unified Code of Corrections became effective. A paragraph of the Code provided that "[i]f the offense being prosecuted has not reached the sentencing stage or a final adjudication, then for purposes of sentencing the sentences under this Act apply if they are less than under the prior

law upon which the prosecution was commenced." (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1008—2—4.) Another paragraph provided that, except in cases of periodic imprisonment, a trial court could not make imprisonment a requirement of probation. Ill. Rev. Stat., 1972 Supp., ch. 38, pars. 1005—6—3(d), 1005—6—3(e).

■■ In *People v. Harvey,* 53 Ill.2d 585, 294 N.E.2d 269, the Supreme Court held that, if they mitigate his sentence and his appeal has not been adjudicated as of its effective date, a defendant may avail himself of the provisions of Uniform Code of Corrections. On January 1, 1973, when the Code became effective, defendant's appeal in this case was pending. The provision of the Code prohibiting imprisonment as a condition of probation mitigates the requirement imposed by the trial court that Husar serve 10 days of imprisonment in the Chicago House of Correction. It follows that the 10-day imprisonment condition of the probation order must be vacated. (*People ex rel. Weaver v. Longo,* 57 Ill.2d 67, 309 N.E.2d 581; *People v. Grant,* 57 Ill.2d 264, 312 N.E.2d 276; *People v. Rhinehart,* 11 Ill.App.3d 859, 296 N.E.2d 781.) Therefore, the probation order with the requirement that Husar be imprisoned for 10 days in the Chicago House of Correction is not now, for this case, a legally permissible sentence.

## VIII.

■■ Accordingly, the judgment is affirmed; and the condition of the probation order requiring Husar's imprisonment for a period of 10 days in the Chicago House of Correction is vacated. The cause is remanded with directions that the trial court issue an amended probation order, effective as of the date of the original sentence.

As we have noted earlier, Husar's appeal has been handled, consistent with Supreme Court Rule 711, by senior DePaul University law students Lee Boyd, Hank Browne and Ruth Schmitt whose work was supervised by Ronald E. Goldberg, assistant professor in the College of Law, DePaul University. They undertook this responsibility when it became clear that the public defender of Cook County could not continue in the cause because questions would have to be raised concerning the competency of the assistant public defender who, in the trial court, undertook to jointly represent Husar and his co-defendant, Barba. This court expresses its appreciation for the caliber of appellate work done in the processing of this appeal. The public service that has been performed is in the highest tradition of our profession.

Affirmed; vacated and cause remanded with directions.

HAYES, P. J., and STAMOS, J., concur.