THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LORRAINE BROWN *et al.,* Defendants-Appellants.

Third District No. 74-294

Opinion filed March 10, 1976.

James Geis and Mark Burkhalter, both of State Appellate Defender's Office, of Ottawa, for appellants.

Michael M. Mihm, State's Attorney, of Peoria (James E. Hinterlong and F. Stewart Merdian, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:

The defendants, Lorraine Brown and Leonard Dismuke, were jointly tried before, and convicted by, a jury in the circuit court of Peoria County for the crime of felony theft. Brown was sentenced to 3 years' probation with 90 days of periodic imprisonment. Dismuke was sentenced to a term of from 1 to 3 years in the penitentiary.

On this appeal, defendants contend: (1) the trial court erred when it refused to permit their attorney to withdraw as counsel for either one of them due to a conflict of interest; and (2) the evidence of the value of the stolen property does not sufficiently support a conviction of felony theft.

At the trial, the evidence established that Paul Tyree, president of Danso-Tech Personal Development Institute, was inspecting the Institute's premises on Thanksgiving Day when he discovered that some stereo equipment had been taken from the Danso-Tech building and piled in boxes in the alley behind the building. Tyree noticed that the building had been broken into, and then he called the police.

A Peoria police officer arrived at the scene and also noticed the equipment. The officer left to obtain an unmarked police car so that he could establish surveillance over the area and apprehend the individuals, who had piled the equipment in the alley, when they returned to pick it up.

The defendants arrived in their car shortly thereafter, and some boys, who were with them, placed some of the equipment in the back seat of their car. Before all of the equipment could be placed in the car, the police approached, and the defendants sped off in their car, but were soon apprehended.

The defendants were jointly indicted and were both represented by the same privately retained counsel. Defense counsel entered his appearance on February 4, 1974, and participated in pretrial matters through March 22, 1974.

On March 25, 1974, the date scheduled for trial, the defendants' at-

.torney moved to withdraw as counsel for either one of the defendants on the ground that a conflict of interest was present due to potentially antagonistic defenses. During a hearing on this motion, defense counsel asserted that the conflict arose out of the following situation:

> "Brown would testify that, in accordance with her claim that she did not know that the stereo equipment was stolen, she told Dismuke to wait and see what the police wanted when they ap- proached the defendants in the alley. Dismuke could testify to corroborate Brown's story and promote her claim of innocence but, by doing so, would allow himself to be impeached by evi- dence of his many prior convictions, which evidence would be seriously prejudicial to his own defense. Accordingly, Dismuke would be well advised not to testify."

The trial court denied this motion.

The alleged conflict of interest stems from the probability that defense tactics at trial could be influenced by counsel's joint representation of both defendants. In determining which tactics to adopt, joint counsel would be hampered by his obligation of loyalty to the interests of each defendant. According to defendants' theory, although it would be in Brown's best interest for counsel to advise Dismuke to provide the exculpatory testimony, nevertheless, Dismuke's best interest would be better served by advising him not to testify. (Defense counsel apparently resolved this dilemma by advising neither defendant to testify; the de- fendants presented no evidence at trial in their own behalf.) Defendants therefore urge that since their defenses were antagonistic, the trial court's refusal to permit their attorney to withdraw as counsel for either of them violated the right to the effective assistance of counsel.

The question involved here is whether, under the circumstances pres- ent, the employment of the same trial tactics and stratagems, or the failure to employ varying ones, by a single counsel on behalf of different defendants at a joint trial constitutes a denial of the right to the effective assistance of counsel.

■■■ The sixth amendment right to counsel does not include an auto- matic right to separate counsel in a case involving more than one defen- dant. (*People v. Husar*, 22 Ill. App. 3d 758, 318 N.E.2d 24.) One counsel in a case against multiple defendants can represent more than one, pro- vided the representation is effective and it does not appear that con- flicts of interest between or among defendants can be anticipated. *Powell v. Alabama*, 287 U.S. 45, 77 L. Ed. 158, 53 S. Ct. 55; *People v. Robinson*, 42 Ill. 2d 371, 247 N.E.2d 898, *cert. denied*, 396 U.S. 946, 24 L. Ed. 2d 248, 80 S. Ct. 385.

Defendants rely principally on *People v. Ware*, 39 Ill. 2d 66, 233 N.E. 2d 421. In *Ware*, the Illinois Supreme Court noted that there was "complete antagonism" between the defense of the co-defendants because one had pled guilty and, prior to his being sentenced, he testified against the defendant. (See *People v. Johnson*, 46 Ill. 2d 266, 265 N.E.2d 869.) *Ware* and *Johnson*, unlike the case at bar, presented situations in which the testimony of a co-defendant implicated the other defendant. Neither case supports the view that the interests of two defendants are antagonistic when one defendant is prepared to offer exculpatory testimony regarding the other, but because of a prior felony conviction he is unwilling to risk the possibility of impeachment.

Nor are the cases of *People v. Husar*, 22 Ill. App. 3d 758, 318 N.E.2d 24, or *People v. Bass*, 101 Ill. App. 2d 259, 243 N.E.2d 305, directly on point, as in those cases, the matter was raised for the first time on appeal. Here, the claim is properly preserved in the record. Moreover, *Husar* and *Bass* contained an additional factor not here present, namely, one defendant either confessed his guilt, or admitted his involvement in the crime, in court.

We have examined various Illinois cases dealing with the denial of a severance where the claim of antagonistic defenses was made. Although the procedural question in these cases differs from that present in the case at bar, the substantive question is the same in both instances, namely, whether the defenses are antagonistic.

In *People v. Canaday*, 49 Ill. 2d 416, 275 N.E.2d 356, the Illinois Supreme Court held that a severance on grounds of antagonistic defenses was properly denied, since the defendants gave consistent alibi testimony. The court further stated:

> "We are not dissuaded from this conclusion by an additional claim of Christeson. It is that her motion for a severance should have been allowed on the ground that she would sustain prejudice in a joint trial with Stanton, who had a criminal record that could be used to impeach his testimony. No authority is offered to support her position. Where we have found this argument presented, it was rejected." 49 Ill. 2d 416, 425.

■■ In *People v. Humphrey*, 129 Ill. App. 2d 404, 262 N.E.2d 721, the antagonism was alleged to have arisen from the introduction into evidence of a prior felony conviction against one defendant. The defense of both defendants consisted of similar alibis. The court rejected the notion that "because one defendant can be impeached, the other defendant has an unqualified right for a severance." The court further stated:

"The mere possibility of impeachment of co-defendants with compatible defenses does not, under the law, prevent them from being tried together." 129 Ill. App. 2d 404, 414.

■■ We believe the defendants' claim relating to the exculpatory testimony does not sufficiently distinguish this case from *Canaday* and *Humphrey*. Here Brown was to give exculpatory testimony that she did not know the items were stolen, and Dismuke was to corroborate this story. The defenses were therefore consistent and complementary, not antagonistic. Accordingly, no error was committed in denying the motion for separate counsel.

The defendants' other contention is that the evidence of the value of the stolen property does not support a conviction for felony theft. It is argued that the State failed to prove the stolen property had a value in excess of $150. Two reasons are advanced to support this view: no competent evidence of value was presented, and no evidence established which items of stereo equipment were found in the defendants' possession.

The record discloses that after the police officer arrived at the scene in response to Tyree's call, the officer left to obtain an unmarked car and Tyree went to the corner tavern, from where he could not see the stereo equipment. The equipment remained unobserved during a 15-20 minute interval before the officer returned.

The defendants soon arrived in their car, and some boys who were with them placed some of the equipment in the back seat. Before all the equipment was placed in the car, the poice approached and the defendants sped off.

No inventory was made of the allegedly stolen equipment found in the defendants' car. The arresting officer testified that he saw some equipment in the car which "looked like stereos and speakers etc."

Tyree testified at trial that the equipment placed in the alley consisted of four stereo speakers, a quadrasonic amplifier, an eight-track tape deck and a Magnavox record player. He recognized the items because he had authorized the purchase of the equipment during July, 1973, for an aggregate of $800, and had used them in giving dance lessons. He further testified that the equipment had been used about 8 hours a day during four months since the purchase. Tyree stated that the equipment did not have any service calls and its condition was good the day before it was taken.

■■ To sustain a felony conviction for theft, rather than a misdemeanor, the value of the stolen property must be proven to be in excess of $150. (Ill. Rev. Stat. 1973, ch. 38, par. 16—1(e); *People v. Tassone*, 41 Ill. 2d 7, 241 N.E.2d 419; *People v. Kurtz*, 69 Ill. App. 2d 282, 216 N.E.2d 524,

*aff'd in part and rev'd in part on other grounds,* 37 Ill.2d 103, 224 N.E.2d 817.) The criterion used in determining value in theft cases is the fair cash market value at the time and place of the theft. (*People v. Hansen,* 28 Ill. 2d 322, 192 N.E.2d 359; *People v. Briseno,* 2 Ill. App. 3d 814, 277 N.E.2d 743.) Cost is not the standard, whether it be original cost or replacement cost. *People v. Stewart,* 20 Ill. 2d 387, 169 N.E.2d 796; *People v. Rose,* 19 Ill. 2d 292, 166 N.E.2d 566; *People v. Hayes,* 133 Ill. App. 2d 885, 272 N.E.2d 423.

■■ On the other hand, although proof of cost alone is insufficient, cost together with other proof, relating to condition, quality and modernness or obsolescence, may afford the basis for a valid finding as to value. (*People v. Todaro,* 14 Ill. 2d 594, 153 N.E.2d 563.) In *Todaro,* the court recognized that evidence of the price paid for liquor by the owner shortly before its theft, together with evidence of the price paid by the receiver of stolen goods, was sufficient to sustain a finding as to value.

■■ In the case at bar, none of the questions, propounded to the witnesses on the issue of value, related to fair cash market value. Rather, the testimony of Tyree, who had purchased the equipment, related to cost. Although the witness stated the equipment was in good condition and in need of no repairs, he also testified that the equipment had been used about 8 hours a day for 4 months. We note further that no inventory was taken of the property found in defendants' car, and that none of the stolen items was placed into evidence and available for the jury to examine. We do not mean to suggest these procedures are required. Nevertheless, the nature of the equipment involved here and the absence of evidence relating to fair cash market value together with the other factors mentioned, lead us to conclude that the evidence of value was insufficient to support a conviction for felony theft.

We therefore reduce the degree of the offense for which defendants were convicted to theft of property not exceeding $150 in value, pursuant to Supreme Court Rule 615(b)(3) (Ill. Rev. Stat. 1973, ch. 110A, par. 615(b)(3)), and remand the cause to the circuit court of Peoria County for resentencing.

Judgment of guilty affirmed; conviction reduced to theft of property not exceeding $150 in value; cause remanded for resentencing.

STENGEL and BARRY, JJ., concur.