THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HENRY THOMPSON, Defendant-Appellant.

First District (3rd Division)   No. 76-237

Opinion filed July 13, 1977.

James Geis and Lynn Sara Frackman, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Renee G. Goldfarb, and John E. Horn, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

The defendant Henry Thompson and his co-defendant Clarence Henley were found guilty of the offense of burglary (Ill. Rev. Stat. 1973, ch. 38, par. 19—1) following a bench trial. Each was sentenced to a term of four to 12 years. Defendant Thompson pursues this appeal independently of his co-defendant at trial. The issue raised by the defendant is whether he was denied effective assistance of counsel where

he and his co-defendant were represented by the same court-appointed public defender in a joint trial.

A statement of facts is necessary to understand the precise alleged conflict of interest that is claimed. The complaining witness, Fred Pucek, resided at 742 North Dearborn in Chicago. At approximately 4 p.m. on June 4, 1974, he awoke from a nap to find an intruder, later identified in court as Clarence Henley, in his apartment. Pucek owned 12 or 13 tape recorders in connection with his hobby of music. When Pucek awoke, Henley was in the process of leaving the apartment. Pucek testified that he pursued the intruder into the hallway where he observed another man, described as shorter and heavier-set than Henley. Pucek rushed back into his apartment and one of the men he had seen attempted to re-enter the apartment. Pucek retrieved an iron rod from underneath his bed. After a brief struggle at the doorway to the apartment during which Pucek received a cut on his forehead, Pucek chased the two men onto the street towards Clark Street. The two men were running "right next to each other," and the shorter man appeared to be carrying something under his left arm. As he was chasing the two men in the direction of a parking lot, Pucek observed the shorter one drop a tape recorder, which Pucek recognized as one of his, in front of the parking lot office. When they came to an alley, the two men ran in different directions. Pucek continued after Henley. At that point, the police intervened and placed Henley under arrest.

Shortly thereafter, Officers Bellini and Angeroni went to Pucek's apartment and found a cane and a jacket with a paperback book in one of the pockets. The book had the names "Henry Thompson" and "Ronny" written on the back cover. The two officers then proceeded to the alley behind Pucek's apartment and there found two tape recorders, partially concealed in one of five garbage cans in that area. Officer Bellini found a vantage point from which he could observe that garbage can undetected. About five to ten minutes later, a man later identified as defendant Henry Thompson walked directly to the container which contained the two tape recorders, pulled a black plastic bag from inside his jacket, looked around, and then reached into the garbage can and placed the two tape recorders into the plastic bag. Officer Bellini walked out, identified himself as a police officer and placed Thompson under arrest for investigation of the burglary.

According to police testimony, after defendant Thompson had been read his Miranda warnings at the police station he was asked why his name was on the book which had been found at Pucek's apartment. He responded that, "The book was in my jacket pocket when I dropped the jacket in the apartment." When asked if the metal cane was his, defendant replied, "The other guy dropped it." These statements were never

reduced to writing. There was testimony that there was no alcohol evident on Thompson's breath, and he appeared to be sober.

Defendant Henry Thompson testified on his own behalf at trial. He denied ever retrieving any tape recorders from the garbage can or ever seeing Clarence Henley on June 4, 1974. He indicated that he had seen and spoken to Henley previously, but that was the extent of their acquaintance. Thompson testified that he was in the vicinity of Ohio and Clark Streets on June 4, 1974, at about 4 p.m. with a group of five or six friends, "killing time" until they decided to go to the Salvation Army Mission where free clothing and sweet rolls were being distributed. He stated that along the way there, he picked up a plastic bag, folded it, and put it in his pocket. The defendant testified that the Mission was not yet open when they arrived, so after waiting four or five minutes, he went to a liquor store, bought a half-pint of wine, and turned to go into the alley to drink it. As soon as he had opened the bottle and downed about half of it, an officer ran out and accused the defendant of hitting someone on the head with a walking cane and robbing him. The defendant stated that he "objected to this statement," whereupon the policeman threatened to shoot him and leave him there. He was then taken to the police station where, according to the defendant, he was beaten. The defendant was unclear, however, as to how many and which police officers were involved.

The defendant denied owning the blue denim jacket found at the scene of the robbery, but admitted that the paperback book had been his until he sold it three or four weeks prior to June 4, 1974, to a "short stocky guy" whose name defendant did not know. He testified that Officer Bellini was lying when he testified that the defendant had stated at the police station that the book was his and that he had lost it when he dropped his jacket at Pucek's apartment. He stated that he saw the metal cane for the first time at the police station and denied having told the police that it belonged to the "other guy." He testified that he had never seen the tape recorders before, had never put them in a plastic bag, and was too busy trying to drink his wine to even notice that they were in the trash can.

Co-defendant Clarence Henley did not testify at trial. The court found each defendant guilty of burglary, subsequently denying the defendants' motion for a new trial. At his sentencing hearing, co-defendant Clarence Henley offered the following version of events:

"One thing, as far as Mr. Pucek, the guy whose house I was supposed to go in his apartment and did this and did that . . . at that time, I was nowhere around at that building at all. As a matter of fact, I do not know nothing about that building. * * * And just like I said in my behalf, I was walking down the street. I was coming from the cleaners. I hadn't put no clothes in, but I was coming from

the cleaners. I was coming from the cleaners when Mr. Pucek started running toward me and this guy Hank down the street. I kept on running toward Chicago Avenue; and Hank, I guess he went on down the alley, because we was running side by side. We were supposed to be running side by side."

Defendant Thompson contends that since this statement was inconsistent with his defense, he was denied effective assistance of counsel by being represented by the same court-appointed public defender who represented Henley. The defendant submits that trial counsel "must have been aware" of the two defenses prior to trial, that counsel was derelict in his failure to withdraw from the defense of one client and move for a severance, and that counsel created a situation that infringed on one client's right to testify and deprived defendant Thompson of his constitutional guarantee to confront and cross-examine witnesses. Defense counsel's asserted conflict of interest, even in the absence of a showing of prejudice, prevented him from giving his undivided loyalty to either defendant. Because of defense counsel's incompetence and conflict of interest, the defendant asserts that his conviction should not stand.

■■ The right to effective assistance of counsel guaranteed by the sixth amendment to the United States Constitution requires that such assistance be untrammeled and unimpaired by a court order directing counsel to simultaneously represent conflicting interests. Any less than this might substantially impair a valued constitutional safeguard. (*Glasser v. United States* (1942), 315 U.S. 60, 70, 86 L. Ed. 680, 699, 62 S. Ct. 457.) However, the mere fact that defendants are to be tried jointly does not necessitate the appointment of separate counsel for each of them. *People v. Normant* (1975), 25 Ill. App. 3d 536, 540, 323 N.E.2d 553; *People v. Somerville* (1969), 42 Ill. 2d 1, 245 N.E.2d 461.

"The right to counsel that is guaranteed by the Sixth Amendment to the Constitution of the United States does not include an automatic right to separate counsel in a case involving more than one defendant. [Citation.] One counsel in a case against multiple defendants can represent more than one, as long as the representation is effective and it does not appear that conflicts of interest between or among defendants can be anticipated. (*Powell v. Alabama* (1932), 287 U.S. 45, 71, 77 L. Ed. 158, 53 S. Ct. 55; *People v. Robinson*, 42 Ill. 2d 371, 247 N.E.2d 898; see *People v. Williams*, 36 Ill. 2d 194, 222 N.E.2d 321.)" *People v. Husar* (1974), 22 Ill. App. 3d 758, 762, 318 N.E.2d 24.

■■ Unless a defendant properly establishes that a conflict of interest actually exists or becomes apparent during trial, the court should not

indulge in speculation to determine whether separate counsel, in the interest of justice, is required. *People v. Hendricks* (1976), 41 Ill. App. 3d 178, 183, 353 N.E.2d 177; *People v. Chapman* (1965), 66 Ill. App. 2d 124, 127, 214 N.E.2d 313.

> "Where there is no showing that a single attorney's representation of multiple defendants caused prejudice to an individual defendant, or that a different result might have obtained had separate counsel been appointed, a court of review will not disturb a judgment on the basis of conjectural or speculative conflicts of interest of codefendants raised for the first time on appeal. (*People v. McCasle* (1966), 35 Ill. 2d 552, 556, 221 N.E.2d 227; *People v. Bass* (1st Dist. 1968), 101 Ill. App. 2d 259, 262, 243 N.E.2d 305.)" *People v. Craig* (1977), 47 Ill. App. 3d 242, 247, 361 N.E.2d 736.

In the instant case, the trial record does not reflect a conflict of interest. There is no indication that defense counsel was aware, prior to the sentencing hearing, that his clients' defenses were adverse. There is nothing in the record to substantiate that he was given the same versions to which defendant Thompson testified at trial and which co-defendant Henley presented at his sentencing hearing, and that he was therefore aware of the possible conflict.

Nor has the defendant demonstrated substantial prejudice resulting from joint representation of co-defendants without which the outcome of the trial would probably have been different. (*People v. Goerger* (1972), 52 Ill. 2d 403, 409, 288 N.E.2d 416; *People v. Morris* (1954), 3 Ill. 2d 437, 449, 121 N.E.2d 810.) The defendant relies on *People v. Stoval* (1968), 40 Ill. 2d 109, 239 N.E.2d 441, in support of his contention that in situations involving incompetence of counsel due to conflicting professional interests, there is no necessity for the defendant to show actual prejudice. (*Stoval,* at 113.) However, the type of conflict of interest asserted in *Stoval* is of a different nature than that asserted here; in *Stoval,* the law firm of which defendant's appointed counsel was a member had represented both the store which had been burglarized and the owner of the store. In other cases relied upon by the defendant, there were similar distinguishing factors. See, *e.g., People v. Richardson* (1972), 7 Ill. App. 3d 367, 287 N.E.2d 517 (counsel represented the defendant's children in an action against dram shop where the defendant had been drinking prior to murder of wife; fee would increase in proportion to length of the defendant's sentence); *People v. Meyers* (1970), 46 Ill. 2d 149, 263 N.E.2d 81 (counsel represented the defendant's wife in a dram shop action against tavern in which the defendant had been drinking prior to commission of crime); *People v. Rose* (1932), 348 Ill. 214, 180 N.E. 791 (pretrial motion for severance on basis of inconsistent defenses denied);

*People v. Bopp* (1917), 279 Ill. 184, 116 N.E. 679 (defense counsel made statement that a co-defendant's defense was inconsistent with that of the defendant whom he had been appointed to represent).

■■ We do not find that incompetency of counsel or inadequacy of the representation of the defendant has been established by facts appearing in the record. We find that under the facts and circumstances of this case, the representation ,of the defendants by a single attorney did not constitute a denial of effective assistance of counsel.

The judgment of the conviction of defendant Henry Thompson is affirmed.

Affirmed.

SIMON, P. J., and McNAMARA, J., concur.